UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

United States, ex. rel. KEITH DARNELL FAIR,[1]

                    Plaintiff/Relator,

                                 6:18-CV-01402
v.

                                 (GLS/TWD)
STEVEN MNUCHIN, United States Treasury
Secretary, et al.,

                    Defendants.
_____

APPEARANCES:

KEITH DARNELL FAIR
Plaintiff/Relator *pro se*
c/o 9005 Old River Road
Marcy, New York 13403

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

      The Clerk has sent to the Court for review the *pro se* Plaintiff's largely incoherent and

incomprehensible complaint in this sealed action against Defendants under the False Claims Act

("FCA"), 31 U.S.C. §§ 3729-3732.[2]  (Dkt. No. 1.)  Also before the Court is Plaintiff's application

---

   [1]  Plaintiff has now filed an affidavit and notice of correction demanding that an order be entered correcting the caption to read "UNITED STATES OF AMERICA, ex rel. KEITH DARNELL FAIR, Relator vs. STEVEN T. MNUCHIN, et al.," rather than "UNITED STATES OF AMERICA, ex rel. KEITH DARNELL FAIR, Plaintiff/Relator vs. STEVEN T. MNUCHIN, et al.  (Dkt. No. 9.)  The Court finds that the change requested by Plaintiff  will have no impact one way or the other on the outcome of the case, and therefore denies Plaintiff's motion for that relief.

   [2]  On December 20, 2018, the Hon. Andrew T. Baxter, U.S. Magistrate Judge, entered an Order and Report-Recommendation recommending dismissal with prejudice of a nearly identical qui tam complaint in an action filed by Plaintiff Anthony Bennett in a case also brought against

for leave to proceed *in forma pauperis* ("IFP application").  (Dkt. No. 2.)

## I.    IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP application, the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted for purposes of this initial review.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

---

the Hon. Diane Davis, Bankruptcy Judge, Northern District of New York and numerous others. *See United States of America, ex. rel. Anthony Bennett v. Mnuchin, et al.*, No. 6:18-CV-01403 (TMJ/ATB), 2018 WL 6702852 (N.D.N.Y. Dec. 20, 2018) ("*Bennett*").

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua*

*sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil

Procedure, which sets forth the general rules of pleading, "does not require detailed factual

allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*.

In determining whether a complaint states a claim upon which relief may be granted, "the court

must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)

(citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in

a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to

raise the strongest arguments they suggest.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,

191 (2d Cir. 2008) (citation omitted).  A *pro se* complaint should not be dismissed "without

giving leave to amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.

1999) (citation and internal quotation marks omitted).  An opportunity to amend is not required

where "the problem with [the plaintiff's] causes of action is substantive" such that "better

pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.     PLAINTIFF'S COMPLAINT

### A.     Factual Allegations

Plaintiff Keith Darnell Fair has described himself in his complaint as "Third Party

Intervener on behalf of KEITH DARNELL FAIR ESTATE," and has alleged that he is bringing

this "Quit tam action in the name of the United States Government. . . ."[3]  (Dkt. No. 1 at 1.[4]) (text

unaltered[5]).  Named Defendants include Steven Mnuchin ("Mnuchin"), United States Treasury

Secretary; Scott M. Stringer ("Stringer"), New York City Comptroller; Darcel L. Clark ("Clark"),

Bronx County District Attorney; Luis M. Diaz ("Diaz"), Bronx County Clerk; James W. Hubert

("Judge Hubert"), Administrative Judge; the Hon. Diane Davis ("Judge Davis"), Bankruptcy

Court Judge, N.D.N.Y.; Anthony J. Annucci ("Annucci"), Commissioner of the New York

Department of Corrections and Community Supervision ("DOCCS"); Ann Marie T. Sullivan

("Sullivan"), Commissioner of the New York Department of Mental Health ("OMH"); Deborah

---

[3]  It is unclear why Plaintiff has referred to himself as a person and an estate in his complaint.  It may be explained by his allegation that 11 U.S.C. § 303(g) "[m]akes it clear that the filing of an Involuntary Bankruptcy Petition creates a Bankruptcy estate of the alleged debtors interest in property even though an order for relief may never be entered, creation of a Bankruptcy estate occurs only on commencement of a case."  (Dkt. No. 1 at 2.)  Plaintiff appears to believe that the "estate" continued following dismissal of his involuntary petition.

[4]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[5]  Unless otherwise indicated, all quotes from Plaintiff's complaint and other submissions included herein are unaltered.

J. McCulloch ("McCulloch"), Executive Director of the Central New York Psychiatric Center ("CNYPC"); and Barbara D. Underwood ("Underwood"), former New York State Attorney General.

Plaintiff alleges he filed an involuntary Chapter 7 bankruptcy petition in the N.D.N.Y. Bankruptcy Court on September 14, 2018, and that the petition was improperly dismissed by Judge Davis. (*See generally* Dkt. No. 1.) On October 10, 2018, Judge Davis issued an order to show cause directing Plaintiff to appear at the federal courthouse in Utica, New York on October 23, 2018, to show cause why the case should not be dismissed with prejudice on the grounds that the involuntary petition had been filed without the requisite filing fee for Chapter 7 proceedings and the involuntary petition and other filings did not appear to comply with the requirements set forth in 11 U.S.C. § 303(b). (Dkt. No. 1-2 at 1.) Plaintiff alleges that Judge Davis did so despite knowing that Plaintiff was civilly committed and unable to appear. (Dkt. No. 1 at 1.) On November 2, 2018, Judge Davis filed an order dismissing Plaintiff's involuntary Chapter 7 case with prejudice for failure to pay the filing fee and noncompliance with 11 U.S.C. § 303(b). (Dkt. No. 1-2 at 2.) Plaintiff claims that Judge Davis "had a Predetermined decision already on paper to deprive him and the estate of their right to protect their property and assets" and "always had intentions to dismiss the case as judgment." (Dkt. No. 1 at 2.)

According to Plaintiff, on September 27, 2018, following the filing of the involuntary petition, he filed a "Writ of Execution . . . to be enforced as a Foreign Judgment pursuant to Title 10 of the UNITED STATES CODE, SECTION 4801 Uniform Foreign Judgment Act, because my Certificate of Protest and Notice of Protest is a foreign default and 'enforcement of Judgments Entitled to Full Faith and Credit.'" *Id.* Plaintiff alleges he did not receive a response

from the Bankruptcy Court concerning the Writ of Execution/Certificate of Protest. *Id*. at 3. Plaintiff also filed a Bill of Equity in the "private side of the court," and has received no response. *Id*.

Plaintiff claims Judge Davis, without ever giving him an opportunity to be heard, violated her oath of office, issued void orders, and predetermined the case to be dismissed "absent of all rule's, Judiciary Laws and Procedures, Regulations, and Laws." *Id*. at 3. Plaintiff demands that an investigation be undertaken of the entire Bankruptcy Court record and the Court's Policies and Procedures. *Id*. According to Plaintiff, he noticed the President of the United States regarding Judge Davis's handling of his involuntary petition. *Id*. at 4.

Plaintiff then moves on to allegations regarding the Internal Revenue Service ("IRS"), alleging that "[t]he only thing that can create a debt with the IRS is the assessment, and claiming that Judge Davis's actions denied him the opportunity to examine the evidence and documents and either confirm or reconfirm the assessment or affirm his right to repudiate his liability." (Dkt. No. 1 at 5.) Plaintiff appears to claim that Judge Davis denied him his right to an assessment and the opportunity to meet with a trustee appointed by the Department of Justice who could assist him with some IRS liability. *Id*. Plaintiff then states his intent to pay 100% of all proven liability for assessed taxes, and to bring an action in district court against anyone filing a proof of claim unaccompanied by evidence of debt, obligation, or liability. *Id*.

### B.    Exhibits to the Complaint

Plaintiff has attached a series of exhibits to his complaint, including Judge Davis's order to show cause and order dismissing Plaintiff's bankruptcy petition referenced above. (Dkt. No. 1-2 at 1-2.) Plaintiff's exhibits also include three affidavits by Plaintiff. Plaintiff's first affidavit,

6

entitled "AFFIDAVIT OF STATUS AND STANDING, Non-Negotiable" and executed by him

on July 19, 2016 (Dkt. No. 1-3), is substantially similar to a handwritten exhibit in the complaint

in *Bennett*, described by Judge Baxter in his Order and Report-Recommendation in *Bennett* as

consisting of "stream-of-consciousness statements that may or may not mean something to

plaintiff."[6]  *Bennett*, 2018 WL 6702852, at *2.  The Court wholly concurs with Judge Baxter's

description.

    Plaintiff's second affidavit is entitled "Affidavit of Truth."  (Dkt. No. 1-4.)  It was

executed by Plaintiff on February 19, 2016.  *Id*. at 6.  The gist of the affidavit is that he is a

"natural, freeborn living Divine Being . . . subject only to Universal jurisdiction of IUS NON

SCRYPTUM," and while he "may voluntarily choose to comply with the laws which others

attempt to impose upon him . . . no such laws nor their enforcers, employees, or agents have any

authority over [him and he is] not in any jurisdiction, for [he] is not of subject status."  *Id*. at 2.

In the affidavit, Plaintiff reserves what he believes to be his natural right not to be compelled

under any contract he did not enter into knowingly, intentionally, and voluntarily, including those

---

    [6] The affidavit contains statements such as: "We are the absolute property of our universal creator and our Noble House of Fair: Fair Keith Darnell and all derivatives thereof, a man . . . ."  (Dkt. No. 1-3 at 2.)  "Our distinct polyphrenic orchestration is determined by Our unique, complex, and intense DNA, Genome coding and patterning, that determines Our Noosphere and Existential purpose as defined only by Our Universal Divine Creator and Gifted to our Divine Being."  *Id*.  "At no time, space, reality, realm, or dimension does any other have any right to place a price or value on Our Divine Being or Our Sacred Gifts defined as Our ESTATE in Trust with Our Universal Divine Creator, except Our Divine Being and/or Our Universal Divine Creator."  *Id*. at 4.  "[A]ny contrivance, trick, or instrument used to imply [a conveyance of legal title from Our Divine Being] has no valid effect or force of any law or covenant. . . . This specifically includes all dogmas, solemn edicts or proclamations by any other and all contracts Intended for any and all other purposes."  *Id*.  The affidavit discusses "strawman" trusts, fiduciary trustees, and authorized versus unauthorized agents, requiring unauthorized agents to be fined one billion dollars "per capacity and per occurrence."  *Id*. According to Plaintiff, his ESTATE/Estate is exempt from levy.  *Id*. at 5.

with supposed benefits to him, and all such contracts are null and void as to him. *Id.* Plaintiff lists specifically, birth certificates, banks accounts, drivers licenses, state license plates, passports, past enrollment and voter registration, citizenship, the Constitution, and use of semantics. *Id*. at 3-4. In the affidavit, Plaintiff revokes those benefits, as well as any powers of attorney executed by him, and declares peace with the United States and its territories. *Id*. at 4-5. Various documents attached to the second affidavit appear to have no readily apparent relevance to claims he has alleged against the Defendants. (Dkt. No. 1-4 at 9-39.)

Plaintiff's third affidavit is entitled "Affidavit of Obligation [–] Notice of Demand/Assessment of Admitted Damages [–] Invoice No. 1 [–] Comptroller Claim No. 2018LW13405 ("Demand")." (Dkt. No. 1-5.) It appears to be a demand from Plaintiff for the payment of one billion dollars for itemized injuries sustained by him against un-named defaulting "Respondents/GOVERNMENT OFFICIAL/MUNICIPALS." *Id*. at 2. The Demand was sent to Defendant Stringer, City of New York Comptroller, on September 20, 2018 (Dkt. No. 1-2 at 3), and both the Bronx County Clerk, Defendant Diaz, and the Bronx Supreme Court were given notice. (Dkt. No. 1-5 at 3.)

Plaintiff has also included an exhibit entitled "Notice of Conveyance," dated February 21, 2017, whereby "Keith Darnell Fair, Beneficiary, the Real Party Interest, Grantor, hereby grant, convey, assign, discharge, settle, extinguish, pay such issues required to settle all liability of the defendant, KEITH DARNELL FAIR." (Dkt. No. 1-6 at 1.) The document purports to indemnify the State of Indiana, United States of America, New York State, and the Judge of any penalties and to give them "broad authority and powers of a Private Citizen to find the accounting and run the ESTATE/Trust of KEITH DARNELL FAIR ESTATE/BENEFICIARY." *Id.* Attached is a

"Protest Notice" sent to the Bronx County Clerk/Bronx Supreme Court Clerk,  Defendants Stringer, and former New York State Attorney General Eric Schneiderman for dishonoring an International Bill of Exchange for three-hundred million and one-hundred million, along with attached penal bonds, bid bonds, performance bonds, payment bonds, sentencing and commitment papers, and detainer order submitted on behalf of the Keith Darnell Fair Estate. (Dkt. No. 1-6 at 2.)  Also attached are papers regarding Plaintiff's request that the United States Attorney General be allowed to intervene in the bankruptcy proceeding before Judge Davis for the purpose of presenting evidence, and that Plaintiff be allowed to intervene.  *Id*. at 3-10.

Finally, Plaintiff has attached a "Private Citizens PRICELIST" setting forth the damage assessment for private wrongs done him by Judge Davis, and an affidavit in support of his "petition."  (Dkt. Nos. 1-7 and 1-8.)

### C.    Claims Asserted

In the section of the complaint labeled "Claims Asserted," Plaintiff alleges that Judge Davis and her clerk violated a variety of federal statutes in addition to the FCA, including sections of the criminal law.  *Id*. at 7-11.  In the sections labeled "Count I" and "Count II," Plaintiff alleges that in addition to the FCA, Davis has violated 18 U.S.C. § 1001 (false statements); 18 U.S.C. §§ 241 and 242 (criminal civil rights violations); the U.S. Patriot Act and Bank Secrecy Act; New York Securities and Investment Advisors Act; and 18 U.S.C. § 1956 (laundering of monetary instruments).  (Dkt. No. 1 at 11-12.)

## IV.    ANALYSIS

### A.    Qui Tam Claim

The FCA, 31 U.S.C. §§ 3729-3732 et seq., provides for liability when any person

"knowingly presents, or causes to be presented, a false or fraudulent claim, payment or approval" to the federal government.  31 U.S.C. § 3729(a)(1).  The qui tam provisions of the FCA allow a private individual, known as a relator, to "bring a civil action for a violation of section 3729 for the person and for the United States Government . . . in the name of the Government."  31 U.S.C. § 3730(b)(2).  A qui tam action under the FCA is brought "on behalf of and in the name of the government" while "the government remains the real party in interest."  *U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp*., 985 F.2d 1148, 1154 (2d Cir. 1993).  The qui tam relator acts in a representative capacity and not on his own behalf and not for the benefit of any other party or interest.  *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

The Second Circuit has held that a *pro se* plaintiff may not bring a claim under the FCA. *See United States ex rel. Mergent Services v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) (holding that relators bringing a False Claims Act qui tam action "are not entitled to proceed pro se.") Because Plaintiff is not represented by an attorney and, thus not qualified to represent the interests of the United States, he cannot bring a qui tam action under the FCA.

For reasons discussed herein, even if Plaintiff were represented by counsel, or seeking assignment of counsel, the Court would recommend dismissal of his FCA qui tam claim.  In order to plead a viable claim under the FCA, "the plaintiff 'must show that defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury.'" *Jones v. U.S. HUD*, No. 11 Civ. 0846 (RJD) (JMA), 2012 WL 1940845, at *4 (E.D.N.Y. May 29, 2012)[7] (quoting *Mikes v.*

---

[7] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

*Straus*, 274 F.3d 687, 695 (2d Cir. 2001)).  A plaintiff alleging a claim under the FCA must

comply with Rule 9(b) of the Federal Rules of Civil Procedure, which provides that a party

asserting a claim for fraud, "must state with particularity the circumstances constituting fraud or

mistake."  *See Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-78 (2d Cir. 1995) (holding

FCA claims must comply with Rule 9(b)).

In Count I of his complaint, Plaintiff alleges that "Defendants, by and through its officers,

agents, and employees, knowingly presented or cause to be presented to an officer or employee of

the government false or fraudulent claims for payment in form of Penal Bonds unbeknowance to

Plaintiff, and illegally charging the Constructive trust."  (Dkt. No. 1 at 11.)  Plaintiff does not

explain what he means by a "Penal Bond," nor does he allege facts in his complaint explaining

why or how any of the Defendants would have presented such a bond to the United States

government for "payment," or that any payment was actually made.[8]  *(See generally* Dkt. No. 1.)

The exhibits annexed to the complaint likewise shed no light on Plaintiff's "Penal Bond" claim.[9]

(Dkt. Nos 1-1 through 1-8.)

The Court finds that there is no factual basis in the complaint for Plaintiff's claim that

---

[8]  In his complaint, Plaintiff alleges "The Defendants, by and through its officers, Section 1824.  Violation of False Claims Act agent, and employees, has authorized the actions of its various officers, agents, and employees to take the actions set forth above by allowing the use of GSA FORMS SF 24 BID BONDS, SF 25 PERFORMANCE BONDS, and SF PAYMENT BOND and MILLER REINSURANCE AGREEMENT 273, 274, and 275, which show all the charges of the Court."  (Dkt. No. 1 at 8.)  The Court has not identified any connection between those bonds listed by Plaintiff and the "Penal Bond" referenced by Plaintiff in his qui tam claim.

[9]  The "Protest Notice" annexed as an exhibit to the complaint and discussed above references bid bonds, performance bonds, and payment bonds in addition to penal bonds but the Notice offers no clue as to its relevance to the claims alleged by Plaintiff.  (Dkt. No. 1-6 at 2.)

Judge Davis, or any of the other named Defendants, presented a "Penal Bond" for payment by the federal government or asked for any other payment from the federal treasury, or that any payment was ever made. Because Plaintiff has failed to allege facts showing that Judge Davis or any of the other Defendants made a knowingly false or fraudulent claim to the United States government seeking payment from the federal treasury, *Jones,* 2012 WL 1940845, at *4, the Court concludes that he has failed to state a qui tam claim under the FCA.

### B.    Judicial Immunity for Defendants Judge Davis and Administrative Judge James W. Hubert

Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "'at liberty to exercise their functions with independence and without fear of consequences.'" *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2005) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson*, 386 U.S. at 553-54). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply are when a judge takes action "outside" his or her judicial capacity and when he or she takes action that although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). A judge cannot be "deprived of immunity because the action he [or she] took was in

error . . . or was in excess of authority." *Id*. at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349,

356 (1978)). "A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants

are immune from suit.'" *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam)

(quoting *Neitzke,* 490 U.S. at 327).

### 1.    Judge Davis

Even the most liberal reading of Plaintiff's complaint shows that all claims he may be

attempting to allege against Judge Davis arise out of her dismissal of his Northern District of

New York Chapter 7 involuntary bankruptcy petition over which she presided as a Bankruptcy

Judge. (*See* Dkt. No. 1 at 1-4.)   Therefore, neither of the two exceptions to absolute judicial

immunity is applicable, and the Court finds that Judge Davis is entitled to judicial immunity with

regard to Plaintiff's claims.

### 2.    Administrative Judge Hubert

In the caption of his complaint, Plaintiff identifies Defendant Hubert as an administrative

judge. (Dkt. No. 1 at 1.)  In his allegations identifying the parties, Plaintiff alleges that

Defendant Hubert is a New York Judge in the Bronx Hall of Justice.  *Id*. at 5.  The New York

State Unified Court System Judicial Directory identifies Judge Hubert as a Justice of the

Westchester Supreme Court elected for a term from 2015 to 2028, and a Westchester County

Court Judge and Acting Supreme Court Justice from 2008 to 2014.[10]

Judge Hubert too would be entitled to judicial immunity for actions taken by him while

presiding over a case involving Plaintiff.  *See Mireles,* 502 U.S. at 9-10.  Plaintiff's complaint

---

[10]  *See* https://iapps.courts. state.ny/judiciarydirectory/Bio?JUDGE-ID=UPDEH_
PLUS_Uzg9fHEN (last visited on January 1, 2019).

contains two factual allegations concerning Judge Hubert.  Plaintiff alleges he noticed the

"United States Treasury Secretary, when Plaintiff Drafted Bronx County Clerk Luis M. Diaz and

Administrative Judge James W, Hubert with an International Bill of Exchange and that the Court

and County Clerk did not perform as required by Law."  *Id*. at 6.  He also alleges that "BRONX

COUNTY CLERK, Luis M. Diaz and Judge James W. Hubert, NEW YORK STATE

ATTORNEY GENERAL BARBARA D. UNDERWOOD, NYC-COMPTROLLER Scoot M.

Stringer and District Attorney Darcel D. Clark are All in violation with the Administrator Judge

Diane Davis and her Law Clerks concerning Title 50."[11] *Id*. at 7.

If these allegations relate to actions by Judge Hubert while presiding in a case involving

Plaintiff, the Judge is entitled to judicial immunity.

### C.    Criminal Statutes

As noted by Judge Baxter in *Bennett*, 2018 WL 6702852, at *8, "[c]rimes are prosecuted

by the government, and not by private parties." (citing *Corrado v. New York Office of Temporary

and Disability Assist*., No. 15-CV-7316 (SJF) (AYS), 2016 WL 3181128, at *5 (E.D.N.Y. June

2, 2016)).  No private right of action exists under criminal statutes absent a clear statutory basis

for such an inference.  *CORT v. Ash*, 422 U.S. 66, 79 (1975); *Vasile v. Dean Winter Reynolds,

Inc*. 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) ("it is a general precept of criminal law that unless

the statute specifically authorizes a private right of action, none exists"), *aff'd*, 205 F.3d 1327 (2d

Cir. 2000).

Plaintiff alleges violations by Defendants of 18 U.S.C. §§ 241 ("conspiracy against

---

[11]  Although not entirely clear, it appears that Plaintiff intends "Title 50," to refer to the
Trading with the Enemy Act, 50 U.S.C. § 4301 et seq.  (*See* Dkt. Nos. 1 at 4; 1-4 at 18.)

rights"), 242 ("deprivation of rights under color of law"), 1001 (false statements), and 1956

(money laundering).  None of these federal criminal statutes authorize a private right of action.

*See, e.g., Storm-Eggink v. Gottfried* , 409 F. App'x 426 (2d Cir. 2011) (no private right of action

under 18 U.S.C. §§ 241 or 242); *Momot v. Dziarcak,* 208 F. Supp. 3d 450, 460 (N.D.N.Y. 2016)

(holding that 18 U.S.C. § 1001 does not create a private rights of action);  *Bender v. General*

*Services Admin.*, No. 05 Civ. 6459 (GEL), 2006 WL 988241, at *1 (S.D.N.Y. April 14, 2006)

(holding that there is no private right of action under 18 U.S.C. §§ 241, 242, and 1001); *Dubai*

*Islamic Bank v. Citibank, N.A*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (no private right of

action for money laundering under 18 U.S.C. § 1956).  Therefore, Plaintiff may not enforce those

criminal statutes, and the Court recommends dismissal of any claims alleged by Plaintiff

attempting to do so.

### D.    Miscellaneous Statutes

Plaintiff has referenced a number of miscellaneous statutes in his complaint.  The Court

finds that Plaintiff has failed to state a claim against any of the Defendants under any of the

statutes. One statute is the Trading with the Enemy Act ("TWEA"), 50 U.S.C. et seq., which

Plaintiff claims was violated  by some of the Defendants.  (Dkt. No. 1 at 4, 7.)  Plaintiff states in

his complaint that "[t]he Constitutional question is how [the TWEA] is operating on the Estate of

KEITH DARNELL FAIR when the conveyance/transfer/Notice of Interest/Statement of Interest

and trust has been established, reclaimed/legally reinstated, the prima facie evidence is before the

U.S. Bankruptcy Court, at 10 Broad Street, Room-230, Utica, New York 13501, as of

09/14/2018."  *Id*. at 4.  Plaintiff follows with a long, largely unintelligible discussion of how he

believes Defendants have violated the TWEA.  *Id*. at 8.

15

The TWEA makes it unlawful for any person in the United States "except with the license of the President," to, *inter alia*, trade with "an enemy."  50 U.S.C § 4303(a) (formerly cited 50 App. U.S.C. § 3).  The "enemy" is defined in 50 U.S.C § 4302 (formerly cited 50 App. U.S.C. § 2).  Section 4309 is entitled "Claims to property transferred to custodian; notice of claim; filing; return of property; suits to recover; sale of claimed property in time of war or during national emergency."  50 U.S.C § 4309 (formerly cited 50 App. U.S.C. § 9).

Plaintiff specifically cites the language of section 4309 regarding the "return of property," and claims that Defendants Diaz, Judge Hubert, Underwood, Clark, and Judge Davis are all in violation of "Title 50."  *Id*. at 7.  Plaintiff claims that the Defendants are acting as "Trustees" to Plaintiff's bankruptcy estate and are required to register as "debt collectors."  *Id*. at 8.  However, as in *Bennett*, "plaintiff does not explain how any of his allegations show that defendants were 'trading' with 'an enemy' of the United States."  2018 WL 6702852, at *9.

Plaintiff cites the Bank Secrecy Act ("BSA") 31 U.S.C. § 5311 et seq., and the USA Patriot Act, Public L. No. 107-56, § 1001, 115 Stat. 272 (2001), expanding the scope of the BSA, and alleges that the provisions require Defendants to reveal the "source of their funds by filing Currency Transaction Reports."  (Dkt. No. 1 at 11.)  However, Plaintiff has failed to state how Defendants violated the statutes or which sections of the statutes were allegedly violated.  *Id*. Plaintiff also cites the "New York Securities Act" and the Investment Advisors Act, 15 U.S.C. § 80a-1 et seq.  *Id*. at 11.  It is unclear what statute Plaintiff is referring to as the New York Securities Law, and there are no allegations in the complaint suggesting that the Investment Advisors Act has any relevance whatsoever to Plaintiff's claims.  It is  unclear why Plaintiff has cited the statute, particularly inasmuch as the complaint is devoid of allegations that relate to

16

individuals "registered under the Act to provide investment advice," and a private right of action

under the statute is available only to "void an investment adviser's contract." *See Bennett*, 2018

WL 67002852, at *9.

Plaintiff also mentions in his complaint that his civil confinement violates the ex post

facto and double jeopardy clauses of the Constitution. (Dkt. No. 1 at 10.) Plaintiff has failed to

provide any factual basis for his conclusory statement about his confinement or why it violates

the Constitution. Moreover, as noted by Judge Baxter in *Bennett*, a challenge to Plaintiff's

detention would be done by a petition for a writ of habeas corpus under 28 U.S.C. § 2254

(challenging his conviction) or § 2241 (challenging the execution of his sentence.)[12] *Id*.

### E.  Miscellaneous Defendants

Plaintiff has named Defendants in this action who are not mentioned, or are only

mentioned in passing in the body of the complaint. They include DOCCS Commissioner

Annucci, OMH Commissioner Sullivan, CNYPC Executive Director McCullough, and former

New York State Attorney General Underwood. (*See generally* Dkt. No. 1.) There are no facts in

---

[12] Plaintiff filed a petition for a writ of habeas corpus challenging his civil commitment at the CNYPC in the Northern District of New York in 2016. *See Fair v. Annucci*, No. 9:16-CV-1434 (DNH) (N.D.N.Y.), Dkt. No. 1. In his petition, Plaintiff raised "equity, "trust," and commercial and/or civil law claims based upon his apparent theory that he could "discharge" his sentence or confinement through the terms of a private trust into which he had placed several state court cases, including his original conviction and proceeding pursuant to Article 10 of the New York Mental Health Law. (No. 9:16-CV-1434, Dkt. No. 3 at 4.) Plaintiff's claims were dismissed as frivolous by the Hon. David N. Hurd. *Id*. at 4,14. In February of 2017, Plaintiff filed a document captioned "Private Citizen Seeks Article-III Chancery Division Pursuant to Article-III Section 2 of the U.S. Constitution, Amended Document Bill in Equity to Replace Habeus Corpus Petition." *Id*. at Dkt. No. 6 at 1. Judge Hurd concluded based on Plaintiff's additional submissions that Plaintiff was not seeking release from civil confinement, which was the only relief available in a habeas corpus proceeding and granted Plaintiff's motion to withdraw his habeas petition and denied his motion to replace the petition with the "Bill in Equity." *Id*. at Dkt. No. 7 at 5.

the complaint which would state a claim against any of these Defendants.

## V.    CONCLUSION

This action is, as described by Judge Baxter in *Bennett*, "the epitome of an incoherent and frivolous case that should be dismissed *sua sponte*."  2018 WL 6702852, at *10.  The Court has concluded that Plaintiff has not and may not bring a qui tam action under any circumstances based on the facts alleged in the complaint.  The same is true with regard to each of the statutory claims discussed above.

Plaintiff has simply made conclusory allegations of violations of statutes that do not relate to him, his dismissed bankruptcy action, or the Defendants named by him.  He has failed to state a claim against any of the Defendants under any of the statutes cited by him, and the Court recommends *sua sponte* dismissal of the complaint on initial review.  Furthermore, because the allegations in Plaintiff's complaint give the Court absolutely no rationale basis for concluding that Plaintiff might be able to state a claim in this action against one or more of the Defendants if given the opportunity to amend, the Court recommends that the dismissal be with prejudice.[13] Because the case is not a qui tam action, the Court will also order that it be unsealed.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED FOR**

---

[13]  The recommendation that Plaintiff's complaint be dismissed with prejudice is not intended to extend to a future attempt by Plaintiff to challenge his civil commitment through a habeas corpus petition or claim under 42 U.S.C. § 1983 challenging the procedures used for confinement at CNYPC.  *See, e.g.*, *Dorsey v. Hogan*, 511 F. App'x 96 (2d Cir. 2013) (discussing section 1983 challenge to civil commitment).  As was found to be the case in *Bennett*, Plaintiff in this case does not appear to be making these types of claims in this action, and if he is, "the claim is so buried in a mountain of nonsensical claims, against defendants who have nothing to do with his current commitment, that he would have to substantially amend the pleading for the court to determine what he might be saying."  2018 WL 6702852, at *9 n.19.

**PURPOSES OF FILING ONLY**; and it is further

      **ORDERED** that Plaintiff's motion to correct the caption (Dkt. No. 9) is **DENIED**; and it is hereby

      **RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** under 28 U.S.C. § 1915(e)(2)(B)(i-iii); and it is hereby

      **ORDERED** that this case be **UNSEALED**, and that a copy of this Order and Report-Recommendation by served on the United States Attorneys Office in the Northern District of New York; and it is further

      **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[14]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[14]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Dated: January 8, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2006 WL 988241
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Sherry BENDER, Plaintiff,
v.
GENERAL SERVICES ADMINISTRATION, HWA
Security Patrol, Inc., Ariel Del Valle, United States
Department of Justice, United States Social Security
Administration, Daniel Levy, Jose Aybar, Robert
Baldassano, Stephen J. Bekesy, Richard Matos, City
of New York, New York City Police Officers of the
Ninth Precinct, Sergeant Ortiz, John Doe # 1, John
Doe # 2, Sergeant Vega, Sergeant Miranda, Sergeant
Rodriguez, C.O. Department Inspector Kevin
Ward, and Ex-Officer Captain Detesky, Defendants.

No. 05 Civ. 6459(GEL).
|
April 14, 2006.

**Attorneys and Law Firms**

Sherry Bender, pro se.

Michael J. Garcia, United States Attorney for the
Southern District of New York, Brian M. Feldman,
Assistant United States Attorney, for defendants General
Services Administration, United States Department of
Justice, United States Social Security Administration,
Daniel Levy, Jose Aybar, Robert Baldassano, Stephen J.
Bekesy, and Richard Matos.

OPINION AND ORDER

LYNCH, J.

**\*1** Plaintiff Sherry Bender, acting pro se, sues a
number of defendants, including the United States
General Services Administration ("GSA"), the United
States Department of Justice ("DOJ"), the United
States Social Security Administration ("SSA"), Daniel Levy,
Jose Aybar, Robert Baldassano, Stephen J. Bekesy, and
Richard Matos (collectively, the "federal defendants"),
alleging various causes of action arising out of her arrest
following an altercation at the New York office of the

Social Security Administration. [1] Plaintiff seeks relief in
the form of damages, costs, and attorney's fees, though
she appears pro se. On December 23, 2005, this Court
referred the case to the Hon. Ronald L. Ellis, United
States Magistrate Judge, for general pre-trial supervision.
The federal defendants moved to dismiss on a variety of
grounds on March 9, 2006, and simultaneously sought
an order staying discovery pending resolution of the
motion to dismiss. On March 14, 2006, Judge Ellis
effectively denied the motion for a stay, ordering discovery
completed by July 14, 2006. The federal defendants
then appealed Judge Ellis's discovery order to this Court,
arguing that it was error to order the federal defendants
to participate in discovery pending resolution of certain
issues in the motion to dismiss. Under Local Rule 6.1, a
response to the federal defendants' motion to dismiss was
due on March 23, 2006. Because the Court has received
neither a response to the motion nor a request for an
extension of time to file one, the motion will be considered
fully submitted. For the reasons set forth below, the
federal defendants' motion to dismiss will be granted in
part and denied in part, and the objection to Magistrate
Judge Ellis's discovery order will be overruled as moot.

The motion to dismiss the claims against the GSA,
SSA, and DOJ (the "federal agency defendants") must
be granted with respect to most of plaintiff's claims for
lack of subject matter jurisdiction. The federal agency
defendants are not independently suable entities, but are
merely agencies and instrumentalities of the United States,
which is immune from suit for damages under the doctrine
of sovereign immunity, except insofar as it has waived that
immunity. See Lunney v. United States, 319 F.3d 550, 554
(2d Cir.2003).

To the extent that plaintiff asserts claims in tort, the
complaint gives no indication that plaintiff has complied
with the requirements for exhaustion of administrative
remedies of the Federal Tort Claims Act ("FTCA"), which
waives sovereign immunity only to the extent that the
Act's requirements are met. 28 U.S.C. §§ 2401(b), 2675(a);
see also Johnson v. Smithsonian Inst., 189 F.3d 180, 189
(2d Cir.1999) (noting that the burden is on the plaintiff
under the FTCA "to plead and prove compliance" with
the Act's exhaustion requirements). To the extent plaintiff
asserts claims under the Constitution, sovereign immunity
has not been waived at all. King v. Simpson, 189 F.3d
284, 287 (2d Cir.1999); see also Armstrong v. Sears, 33
F.3d 182, 195 (2d Cir.1994) ("[A] damages claim against

the United States [is] barred by the doctrine of sovereign immunity [where] Congress has not acted to waive the immunity of the United States."). Finally, to the extent plaintiff seeks to bring claims under 18 U.S.C. §§ 6(a), 241, 242, 1001, and 1512(d)(4) (*see* Compl. 1-2), the Court also lacks jurisdiction because none of those statutes allow for a private civil action. *See, e.g., Clements v. Miller,* No. MO-97-CA-160, 2005 WL 2085497, at \*3-\*4 (D.Colo. Aug. 29, 2005) (holding that there is no private right of action under 18 U.S.C. §§ 241, 242, 1001 or 1512); *Ippolito v. Meisel,* 958 F.Supp. 155, 161 (S.D.N.Y.1997) (holding that there is no private right of action under 18 U.S.C. §§ 241 and 242); *Gipson v. Callahan,* 18 F.Supp.2d 662, 668 (W.D.Tex.1997) (holding that there is no private right of action under 18 U.S.C. §§ 241, 242 or 1512); *Dugar v. Coughlin,* 613 F.Supp. 849, 852 n. 1 (S.D.N.Y.1985) (holding that there is no private right of action under 18 U.S.C. §§ 241 and 242); *see also House v. Hastings,* 91 Civ. 3780(JSM), 1992 WL 44370, at \*1 n. 1 (S.D.N.Y. Feb. 21, 1992) (noting that 18 U.S.C. § 1001 "do[es] not readily provide for a private right of action"). [2]

 **\*2** The Court may have jurisdiction to consider plaintiff's claim that certain agency defendants-most importantly, the SSA-violated her right to financial privacy under 12 U.S.C. § 3402 (Compl.¶¶ 48-49); *see* 12 U.S.C. § 3402 (restricting the government's authority to access or obtain "information contained in the financial records of any customer from a financial institution"); *see also* 12 U.S.C. § 3417 ("Any agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate...."); 12 U.S.C. § 3416 ("An action to enforce any provision of this chapter may be brought in any appropriate United States district court...."). However, the complaint fails to state a claim under 12 U.S.C. § 3402, because it does not allege that any defendant actually obtained (or attempted to obtain) protected information from plaintiff's financial records without her consent. The most that the complaint can be read to allege is that defendants (1) insisted, unsuccessfully, that plaintiff disclose her bank number, and (2) later obtained the number for the purpose of depositing money into plaintiff's account. There is no indication, however, that defendants sought to use the bank number to obtain any information from the bank account. Indeed, plaintiff admits that the money was never even deposited through direct deposit, but rather sent in the mail. (Compl.¶ 50.)

Thus, it appears that defendants never made any use of the bank number they allegedly obtained.

The motion to dismiss is also granted with respect to defendant Levy, an Assistant United States Attorney, because plaintiff alleges no facts sufficient to state any claim against him. Moreover, to the extent plaintiff sues Levy for actions he took as a prosecutor in the initiation or prosecution of a criminal proceeding, the suit is barred by absolute immunity. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 269-70 (1993). *But cf. Zahrey v. Coffey,* 221 F.3d 342, 346 (2d Cir.2000) ("Actions taken [by a prosecutor] as an advocate enjoy absolute immunity, while actions taken as an investigator enjoy only qualified immunity." (citations omitted)).

Plaintiff also fails to state any viable claim against defendants Aybar and Baldassano. To the extent she sues for various common-law torts (such as assault, battery, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress), these claims are barred by the Federal Tort Claims Act, which does not permit such suits to be brought against individual federal officers acting within the scope of their employment (and even construing plaintiff's pro se complaint liberally, there is no allegation that these defendants were acting outside the scope of their employment). *See* 28 U.S.C. § 2679; *Rivera v. United States,* 928 F.2d 592, 608-09 (2d Cir.1991). Plaintiff's claim for damages based on violation of due process also fails, because such claims cannot be based on a denial of Social Security benefits. *See Schweiker v. Chilicky,* 487 U.S. 412 (1987). Moreover, plaintiff alleges no prejudice to the filing of her application for reconsideration of the denial of her benefits application; on the contrary, she concedes that the challenged findings of the Administrative Law Judge were overturned sometime in 2004. (Compl.¶ 48.) Thus, she presents no claim of deprivation of liberty or property that could sustain a due process claim in connection with the processing of her application for Social Security benefits.

 **\*3** Defendants Aybar and Baldassano are also entitled, as a matter of law, to qualified immunity on plaintiff's claims that they violated her alleged constitutional rights "to be served with respect and dignity," "to be free ... from harassment, threats, and intimidation," and to "financial privacy." (Compl.¶ 47.) These allegations, on the facts of this complaint, do not assert violations of clearly

established constitutional rights. *See Velez v. Levy,* 401 F.3d 75, 100 (2d Cir.2005).[3]

The two remaining federal defendants, Bekesy and Matos, seek dismissal primarily on the ground that they have not been properly served pursuant to the requirements of Rule 4 of the Federal Rules of Civil Procedure.[4] Indeed, Bekesy and Matos, who reside in Florida, claim to have received no papers from plaintiff. This defense is pointlessly hypertechnical. Both of these defendants manifestly have received notice of the allegations of the complaint. So has the United States Attorney, which has appeared to represent them. Since the principal purpose of the service requirement is to assure such notice, *Hanna v. Plumer,* 380 U.S. 460, 462 n. 1 (1965); *In re Initial Public Offering Secs. Litig.,* 358 F.Supp.2d 189, 209 (S.D.N.Y.2004), the defendants' position lacks equity. It is particularly disappointing that the Government, which ought to be accountable to its citizens, takes this position against a pro se plaintiff, and even goes so far as to urge dismissal, which would effectively preclude relief against these individual federal defendants regardless of the merits of the action, since the complaint was brought on the last day possible before the running of the statute of limitations. (Mem. Motion to Dismiss at 6); *see Kronisch v. United States,* 150 F.3d 112, 123 (2d Cir.1998).

Despite this lack of equitable appeal, to the extent plaintiff has failed to show compliance with the service requirements of the federal rules, those requirements must be enforced. *Megibow v. Clerk of United States Tax Court,* 04 Civ. 3321(GEL), 2004 WL 1961591, at *1 (S.D.N.Y. Aug. 31, 2004); *see also Kwon v. Yun,* 05 Civ. 1142(GEL), 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) ("The burden on a motion to dismiss for insufficient service of process rests with the plaintiff, who must, through specific factual allegations and any supporting materials, make a prima facie showing that service was proper.") And indeed, plaintiff has not complied with the requirements of Rule 4. Under subsection (i) of the Rule, which governs service in actions against the United States, its agencies, officers, and employees, plaintiff was required either to deliver a summons to the United States Attorney for the district in which the action was brought (or to an employee designated by the United States attorney), or to send a copy of the summons and complaint by registered or certified mail to the civil process clerk at the office of the United States Attorney. Plaintiff was also required to serve the Attorney General

of the United States by registered or certified mail. *See* Fed.R.Civ.P. 4(i). Plaintiff did not comply with these provisions. Moreover, plaintiff does not claim to have personally served defendants Bekesy or Matos; nor does plaintiff claim to have attempted delivery of a summons to these defendants' home or place of business, or to have effected service on a properly designated agent. Thus, plaintiff has also failed to comply with Federal Rule 4(e) and with the state rules that Rule 4(e) incorporates. See Fed. R. Civ. R. 4(e); N.Y.C.P.L.R. §§ 308, 311; Fla. Stat. Ann. § 48.031.

**\*4** It does not follow, however, that the claims against Bekesy and Matos must be dismissed. Where service has not been proper, the Court has broad discretion either to dismiss the action or to quash the improper service and extend the time for service. *See Tishman v. Associated Press,* 05 Civ. 4278(GEL), 2005 WL 3466022, at *1 (S.D.N.Y. Dec. 16, 2005). Here, the interests of justice counsel against dismissal, at least for those claims which are not, on their face, manifestly futile. Plaintiff is a lay person contending against the entire United States Government. Her claims, to the extent they have any merit, should be heard. Dismissal, as noted above, would put an end to the litigation, notwithstanding any merit the claims might have. And the defendants clearly have not been prejudiced in any way, since they have all received actual notice of the lawsuit. Accordingly, the motion to dismiss with respect to defendants Bekesy and Matos will be denied, except to the extent described below; the improper service will be quashed; and plaintiff will be given thirty days to effectuate proper service.

Though the Court will not dismiss the claims against Bekesy and Matos in their entirety, certain claims against them may, in the interest of judicial economy, be disposed of immediately. The Court's analysis of the claims against other defendants has already made clear, for example, that plaintiff's claims are manifestly futile to the extent they allege common-law torts, violation of 18 U .S.C. §§ 6(a), 241, 242, 1001, 1512(d)(4), and 12 U.S.C. § 3402, and violation of plaintiff's alleged constitutional rights "to be served with respect and dignity," "to be free ... from harassment, threats, and intimidation," and to "financial privacy." (Compl.¶ 47.) Nothing in the record or in the law would justify a different conclusion with respect to defendants Bekesy and Matos, and accordingly, to the extent plaintiff asserts such claims against Bekesy and Matos, the motion to dismiss will be granted. However,

2006 WL 988241

the Court will refrain from addressing the merits of plaintiff's additional claims against Bekesy and Matos-namely, the constitutional false arrest and malicious prosecution claims against Bekesy, and the constitutional excessive force claim against both Bekesy and Matos [5] - until such time as defendants Bekesy and Matos are properly made parties to the suit.

Accordingly, the federal defendants' motion to dismiss is granted as to the General Services Administration, the United States Department of Justice, the United States Social Security Administration, Levy, Aybar, and Baldassano. As to Bekesy and Matos, the motion to dismiss is granted except to the extent plaintiff alleges constitutional claims for malicious prosecution, false arrest, and excessive force. Plaintiff shall have until May 12, 2006, to effect proper service on Bekesy and Matos; failure to effect service by that date will lead to dismissal of the action as to those defendants as well. If plaintiff effects proper service, Bekesy and Matos shall have sixty days from the date of service to submit an answer or other response. The motion to stay discovery pending resolution of the motion to dismiss is denied as moot, as the motion to dismiss has now been decided.

**\*5** SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2006 WL 988241

Footnotes

1    Plaintiff's claims against other defendants are not at issue here.

2    Although the government is correct that the above-cited statutes do not provide a private remedy, the government's assertion that "plaintiff does not have standing to bring a civil action based on criminal statutes" (Mem. Motion to Dismiss at 8 n. 4) may overstate the extent to which private remedies are unavailable for violations of criminal law. *See, e.g., Alaji Salahuddin v. Alaji,* 232 F.3d 305, 307-12 (2d Cir.2000) (discussing, in the context of the Child Support Recovery Act, the circumstances under which a criminal statute may be read as creating a private civil remedy).

3    To the extent plaintiff alleges that Aybar and Baldassano violated 18 U.S.C. §§ 6(a), 241, 242, 1001, and 1512(d)(4), the action is dismissed because these statutes do not provide a private cause of action. *See supra.* With respect to 12 U.S.C. § 3402, plaintiff has failed to state a claim for the reasons described in the context of the federal agency defendants. *See supra.*

4    Defendants Levy, Aybar, and Baldassano also raised defenses based on improper service, but later withdraw them. (*See* Letter from Michael J. Garcia, United States Attorney (Mar. 29, 2006).)

5    Though the complaint does not make clear whether plaintiff alleges an excessive force claim specifically under the Fourth Amendment, the allegations may be read as including such a claim. *Cf. McEachin v. McGuinnis,* 357 F.3d 197, 199 n. 2 (2d Cir.2004) ("It is well-established that the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." (citation and internal quotation marks omitted)).

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3181128
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Christopher Corrado, Plaintiff,

v.

New York Office of Temporary and Disabilty
Assistance, Child Support, Samuel D. Roberts,
Suffolk County Department of Social Services,
John O'Neil, New York Office of Indigent
Defense, William Leahy, New York Family Court
System, Andrew Cuomo, Eric Schneierman,
Judicial Review Committee of the State
of New York, Klonik, Ruderman, Acosta,
Belluck, Cohen, Corngold, Harding, Stoloff,
Weinstein, Judge Richard Hoffman, Magistrate
Orlando, Magistrate Joseph Cherry, Court of
Appeals of N.Y., and J. Lippman, Defendants.

15-CV-7316 SJF)(AYS)
|
Signed 06/02/2016

**ORDER**

FEUERSTEIN, District Judge.

*1 On December 21, 2015, *pro se* plaintiff Christopher
Corrado ("plaintiff" or "Corrado") filed an *in forma
pauperis* complaint in this Court seeking to challenge
an action pending in the New York State Family
Court, Tenth Judicial District, Suffolk County against
him: *Eileen D'Amico v. Christopher Corrado*, "and all
related actions therein."[1] Complaint ("Compl.") at
2, Docket Entry ("DE") [1]. The instant complaint
names as defendants[2] the New York Office of
Temporary and Disability Assistance, Child Support
("OTDA"); OTDA employee-Child Support, Samuel D.
Roberts ("Roberts"); the Suffolk County Department
of Social Services ("DSS"); DSS employee-Child
Support, John O'Neil ("O'Neil"); New York Office of
Indigent Defense ("NYOID"); William Leahy ("Leahy"),
New York State Family Court System; New York
Governor Andrew Cuomo ("Gov. Cuomo"); New
York Attorney General Eric Schneierman ("NYAG

Schneiderman"); Judicial Review Committee of the
State of New York ("NYJRC"); NYJRC members
Klonik, Ruderman, Acosta, Belluck, Cohen, Corngold,
Harding, Stoloff, and Weinstein (collectively, "NYJRC
Members"); Family Court Judges Richard Hoffman
("Judge Hoffman"), Magistrate Orlando, Magistrate
Joseph Cherry ("Magistrate Cherry"); the Court of
Appeals of N.Y.; and J. Lippman ("Lippman" and
collectively, "defendants"), purporting to allege claims
under a variety of federal criminal and civil statutes.

The complaint is accompanied by an application to
proceed *in forma pauperis.* Upon review of the plaintiff's
declaration in support of his application to proceed *in
forma pauperis*, the court finds that plaintiff's financial
status qualifies him to commence this action without
prepayment of the filing fee. 28 U.S.C. § 1915(a)(1).
Accordingly, plaintiff's application is granted. However,
for the reasons that follow, the complaint is *sua sponte*
dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

**I. BACKGROUND**

**A. Prior Actions**
The instant action is plaintiff's <u>fifth</u> attempt to bring
issues regarding his on-going child support dispute to this
Court. On August 12, 2015, plaintiff filed a Notice of
Removal seeking to remove to this Court a child support
enforcement action commenced in or about September
2010 by Eileen D'Amico against Corrrado in the Family
Court of the State of New York, County of Suffolk – 10th
Judicial District ("state court"). By Memorandum and
Order dated August 25, 2015, the Court granted Corrado's
application to proceed *in forma pauperis* and remanded the
case to the state court pursuant to 28 U.S.C. § 1447(c). *See*
Corrado I, DE [12] (the "Remand Order").[3]

*2 Corrado also filed three *in forma pauperis* complaints
in this Court against New York state judicial officers
involved with the child support enforcement action
against him in state court. Specifically, he filed
substantially identical complaints against Judge David
Freundlich, Supervising Judge and Acting Supreme Court
Justice of the Family Court of the State of New York,
County of Suffolk, *see* 15-cv-5389, Support Magistrate
Meridith Lafler, Family Court of the State of New York,
County of Suffolk, *see* 15-cv-5390, and Judge Bernard
Cheng, Family Court of the State of New York, County

of Suffolk. *See* 15-cv-7221. By Memorandum and Order dated May 20, 2016, the undersigned granted Corrado's applications to proceed *in forma pauperis* and *sua sponte* dismissed all three complaints, with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B). *See* 15-cv-5389, DE [10]; 15-cv-5390, DE [10]; and 15-cv-7221, DE [10].

**B. The Instant Complaint** [4]

Plaintiff's complaint is difficult to comprehend but appears to challenge the underlying state court case pending against him in the New York State Family Court, Suffolk County, in addition to related state court litigation and actions taken by various state agencies and their officers/employees. Plaintiff alleges claims arising under 11 U.S.C. § 362(a), 15 U.S.C. §§ 1673, 1675, 18 U.S.C. §§ 242, 245, 1514, 2381, 2382, and 42 U.S.C. §§ 1983, 12203. Compl. at 1, ¶¶ 1, 5-10. He is apparently seeking redress for "criminal acts and Federal violations in the malicious prosecution of Petitioner Christopher Corrado in the Eileen D'Amico v. Christopher Corrado Family Court of the State of New York case(s) and all related actions therein." [5] Though far from clear, it appears that plaintiff is seeking review in this Court of the underlying Family Court and state court actions as well as any determinations made by any of the defendant-agencies relating to his child support obligations. *Id.* at 10 ("Petitioner request[s] all orders in this matter be void and vacated, permanent injunctive relief on all Family Court Matters, agencies and for all Family Courts of the State of New York to refrain from any further action upon the Petitioner (and child)....").

Plaintiff's fourteen page complaint is largely consists of citations to, and excerpts from, federal statutes and case law, and is wholly conclusory. It is completely devoid of factual allegations, and fails to identify any of the defendants or attribute any specific act or omission to any one of them. Indeed, not one of the individual defendants is mentioned anywhere in the complaint beyond the caption. He seeks to recover, *inter alia*, a monetary judgment in the sum of $10,000,000 for himself and his child from each defendant. Compl. at 10.

**II. DISCUSSION**

**A. *In Forma Pauperis***

Having reviewed plaintiff's declaration in support of his application to proceed *in forma pauperis*, the Court finds

that plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Accordingly, plaintiff's request for permission to proceed *in forma pauperis* is granted.

**B. Standard of Review**

Under the *in forma pauperis* statute, 29 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). It is axiomatic that district courts are required to read *pro se* complaints liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed. 2d 1081 (2007) (citation omitted), and to construe them "to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (quotations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009)), *aff'd.*, ___ U.S. ____, 133 S. Ct. 1659, 185 L.Ed. 2d 671 (2013).

**\*3** Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). While the plausibility standard "does not require detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 557); *accord Dejesus v. FIF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013).

**C. Section 1983 Claims**

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> Every person who, under color of
> any statute, ordinance, regulation,

custom, or usage, of any State ...
subjects, or causes to be subjected,
any citizen of the United States ...
to the deprivation of any rights,
privileges, or immunities secured by
the Constitution and laws, shall be
liable to the party injured ....

42 U.S.C. § 1983; *see also Rehberg v. Paulk*, ___ U.S.
____, 132 S. Ct. 1497, 1501-02 (2012), 182 L.Ed.2d 593.
"In order to state a claim under § 1983, a plaintiff must
allege (1) that the conduct complained of was committed
by a person acting under color of state law, and (2) that
such conduct deprived the plaintiff of a right, privilege,
or immunity secured by the Constitution or laws of the
United States." *Dwyer v. Regan*, 777 F.2d 825, 828 (2d
Cir. 1985); *see also Rae v. Cty. of Suffolk*, 693 F. Supp.
2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*,
188 F.3d 51, 53 (2d Cir. 1999)). Plaintiff generally claims
that defendants have violated his rights under the First,
Fourth, Fifth, Seventh, Eighth, Ninth, Thirteenth, and
Fourteenth Amendments to the U.S. Constitution. *See*
Compl. p.2.

Section 1983 does not itself create substantive rights, but
rather offers "a method for vindicating federal rights
elsewhere conferred." *Patterson v. Cty. of Oneida*, 375
F.3d 206, 225 (2d Cir. 2004). "Despite the broad terms
of § 1983, this Court has long recognized that the statute
was not meant to effect a radical departure from ordinary
tort law and the common-law immunities applicable in
tort suits." *Rehberg*, 132 S. Ct. at 1502; *see also Filarsky
v. Delia*, — U.S. —, 132 S. Ct. 1657, 1665 (2012)
("[Courts] read § 1983 in harmony with general principles
of tort immunities and defenses." (quotation and citation
omitted)).

In addition, "a plaintiff must establish a given defendant's
personal involvement in the claimed violation in order to
hold that defendant liable in his individual capacity under
§ 1983." *Patterson*, 375 F.3d at 229; *see also Gill v. Mooney*,
824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal
involvement by [a defendant] in the allegedly unlawful
conduct of his subordinates, he cannot be held liable under
section 1983."). A complaint based upon a violation under
Section 1983 that does not allege the personal involvement
of a defendant fails as a matter of law. *See, e.g., Johnson
v. Barney*, 360 Fed.Appx. 199, 201 (2d Cir. 2010).

1. Sovereign Immunity

The Eleventh Amendment to the United States
Constitution provides that "[t]he Judicial power of the
United States shall not be construed to extend to any
suit in law or equity, commenced or prosecuted against
one of the United States by Citizens of another State,
or by Citizens or Subjects of any Foreign State." U.S.
Const, amend. XI. The Supreme Court has made clear
"that the Constitution does not provide for federal
jurisdiction over suits against non-consenting states."
*Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721,
726, 123 S. Ct. 1972, 155 L.Ed.2d 953 (2003) (citations
omitted); *see also KM Enters., Inc. v. McDonald*, 518
Fed.Appx. 12, 13 (2d Cir. 2013) (noting that "[a]s a
general matter, states enjoy sovereign immunity from
suit in federal court, even if the claim arises under
federal law." (citations omitted)). Moreover, the Eleventh
Amendment entitlement to sovereign immunity extends
"to entities considered arms of the state, such as state
agencies." *Walker v. City of Waterbury*, 253 Fed.Appx. 58,
60 (2d Cir. 2007) (internal quotation marks and citations
omitted). The jurisdictional bar proscribing suits against
a State, its agencies or departments "applies regardless of
the nature of the relief sought." *Pennhurst State Sch. &
Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79
L.Ed.2d 67 (1984).

**\*4** It is well-established that New York State has not
waived its immunity for Section 1983 suits and there
has been no statutory waiver. *See, e.g., Mamot v. Bd. of
Regents*, 367 Fed.Appx. 191, 192 (2d Cir. 2010) ("New
York has not consented to § 1983 suits in federal court");
*Garcia v. Paylock*, No. 13-CV-2868, 2014 WL 298593, at
\*3 (E.D.N.Y. Jan. 28, 2014) ("The State has not waived
its immunity, nor has its immunity been abrogated, for the
causes of action plaintiff has asserted" pursuant to § 1983).
Accordingly, the various state courts and agencies named
by plaintiff are immune from suit. *See, e.g., McKeown v.
N. Y. State Comm 'n on Judicial Conduct*, 377 Fed.Appx.
121, 122-23 (2d Cir. 2010) (state courts and disciplinary
committees are immunized from suit as arms of the State);
*Lach v. N. Y. State Office of Temp. & Disability Assistance*,
No. 11-CV-402, 2011 WL 837743, at \*1 (E.D.N.Y. Mar. 4,
2011) (NY OTDA "has Eleventh Amendment immunity
from suit").

Eleventh Amendment immunity also extends to suits for
damages against state officers in their official capacities
as "lawsuits against state officers acting [in] their official

capacity and lawsuits against state courts are considered to be lawsuits against the state." *McNamara v. Kaye*, No. 06-CV-5169, 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) (citations omitted), *aff'd*, 360 Fed.Appx. 177 (2d Cir. 2009); *but see Edelman v. Jordan*, 415 U.S. 651, 677, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974) (a plaintiff may sue a state official acting in his official capacity only for "prospective injunctive relief" from violations of federal law). As plaintiff seeks monetary damages and has not articulated any claim for prospective relief against any individual, the official-capacity claims against the state officers are also barred by the Eleventh Amendment.

Accordingly, plaintiff's claims against the state agencies OTDA, NYOID, New York State Family Court System, New York Court of Appeals, NYJRC, and the individual defendants acting in their official capacities, Roberts, Leahy, Gov. Cuomo, NYAG Schneiderman, NYJRC Members Klonik, Ruderman, Acosta, Belluck, Cohen, Corngold, Harding, Stoloff, Weinstein, Judge Hoffman, Magistrate Orlando, Magistrate Cherry, and Lippman are dismissed on Eleventh Amendment and sovereign immunity grounds.

To the extent plaintiff seeks to assert claims against any of the individual state defendants in their individual capacities under 42 U.S.C. § 1983, his claims also fail. Apart from referencing these defendants in the caption, not one is mentioned in the body of the complaint. Given the total absence of factual allegations that might establish their personal involvement in an alleged constitutional violation, plaintiff has not alleged plausible Section 1983 claims against Roberts, Leahy, Gov. Cuomo, NYAG Schneiderman, NYJRC Members Klonik, Ruderman, Acosta, Belluck, Cohen, Corngold, Harding, Stoloff, Weinstein, Judge Hoffman, Magistrate Orlando, Magistrate Cherry, and Lippman, and such claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

## 2. Judicial Immunity

The Supreme Court has found that "actions taken by judges within the legitimate scope of judicial authority" are "functions that are absolutely immune from liability for damages under § 1983." *Rehberg*, 132 S. Ct. at 1503. This absolute immunity includes state government officials, such as a support magistrate in the Family Court, under a "quasi-judicial" theory. *See, e.g., Williams v. Williams*, 11-CV-246S, 2012 WL 639697, *7 (W.D.N.Y.

Feb. 27, 2012) ("This [absolute judicial] immunity has also been found to extend to support magistrates."); *Lometvas v. Cardozo*, 95-CV-2779, 2006 WL 229908, *5 (E.D.N.Y. Jan. 31, 2006) (finding that plaintiff's claims against a support magistrate in the Family Court were barred by absolute judicial immunity).

**\*5** Three of the named defendants, Judge Hoffman, Magistrate Orlando, and Magistrate Cherry, appear by title to be judicial officers, and a fourth, Lippman is likely sued in his former capacity as Chief Judge of the New York Court of Appeals. As such, all four of these judicial defendants enjoy absolute immunity from suits for damages for judicial acts performed in their judicial capacities. *See Rehberg*, 132 S. Ct. at 1503; *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Corrado alleges no acts performed by the judicial defendants, let alone acts that fall outside the scope of judicial immunity. Accordingly, based upon the doctrine of absolute judicial immunity, plaintiff's Section 1983 claims against Judge Hoffman, Magistrate Orlando, Magistrate Cherry, and Lippman are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

## 3. Claims Against DSS and O'Neil

Although plaintiff has named DSS and DSS employee O'Neil as defendants, he has not alleged a plausible Section 1983 claim against either of them. Plaintiff's claims against DSS fail as a matter of law because this defendant is merely an administrative arm of the municipality, Suffolk County, and has no independent legal identity. "In New York, agencies of a municipality are not suable entities" because "[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." *Santiago v. City of New York*, No. 06 Civ. 15508, 2008 WL 2854261, at *3 (S.D.N.Y. July 21, 2008); *see also Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) ("Plaintiffs' claim against the Suffolk County Department of Social Services must be dismissed because it is not a suable entity"). Accordingly, because DSS lacks the capacity to be sued, plaintiff's claims against it are implausible and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief.

Plaintiff's claims against O'Neil fare no better. The complaint does not include any factual allegations of conduct or inaction directly attributable to any defendant,

including O'Neil, and thus plaintiff has not alleged a plausible claim. Given the absence of allegations of any personal involvement by O'Neil suggesting a deprivation of some constitutional right, plaintiff's Section 1983 claim against him cannot stand and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief.

**D. No Private Right of Action**

1. Claims Under Federal Criminal Statutes

Plaintiff seeks to impose liability against the defendants under sections 242, 245, 1514, 2381, and 2382 of title 18 of the United States Code. It is well-settled, however, that "crimes are prosecuted by the government, not by private parties." *See Hill v. Didio*, 191 Fed.Appx. 13, 14-15 (2d Cir. 2006). It is a "general precept of criminal law that unless the statute specifically authorizes a private right of action, none exists." *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) (citations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).

There is no private right of action under any of the sections cited by plaintiff. *See Hill*, 191 Fed.Appx. at 15 (no private right of action under 18 U.S.C. § 242 (citation omitted)); *Gunter v. Long Island Power Auth/Keyspan*, No. 08 CV 498, 2011 WL 1225791, at *11 (E.D.N.Y. Feb. 15, 2011) (no private right of action under either § 242 or § 245), *adopted by* 2011 WL 1154382 (E.D.N.Y. Mar. 29, 2011); *Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058, 2015 WL 2354308, at *13 (E.D.N.Y. May 15, 2015) (citation omitted) (dismissing claims for treason and misprision of treason under 18 U.S.C. §§ 2381 and 2382, respectively, because statutes do not provide private right of action); *Canning v. Veitch*, 15-CV-1215, 2015 WL 7444260, at *2 (N.D.N.Y. Oct. 16, 2015) (dismissing claim brought under 18 U.S.C. § 1514 because the statute "create[s] no private right of action that can be enforced" by plaintiff), *adopted by* 2015 WL 7432376 (N.D.N.Y. Nov. 23, 2015); *see also* 18 U.S.C. § 1514(a)(1) (explicitly providing for issuance of a temporary restraining order "upon application of the attorney for the Government"). Accordingly, plaintiff's attempt to assert causes of action against the defendants under these statutes fails as a matter of law. Because plaintiff cannot state a plausible claim for relief under any of these statutes, his causes of action alleging violations of 18 U.S.C. §§ 242, 245, 1514, 2381, and 2382 are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii).

2. Claims Under the Consumer Credit Protection Act

**\*6** Plaintiff also alleges claims arising under sections of the Consumer Credit Protection Act ("CCPA") regarding restrictions on garnishments. 15 U.S.C. §§ 1673, 1675. Like his claims brought pursuant to Title 18, plaintiff cannot pursue his claims under the CCPA because there is no private right of action under these statutes. *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 501 (S.D.N.Y. Mar. 6, 2015) (no private right of action under 15 U.S.C. § 1673, noting that the section is enforced exclusively by the Secretary of Labor) (citing *Long Island Trust Co. v. U.S. Postal Serv.*, 647 F.2d 336, 341 (2d Cir. 1981)); 15 U.S.C. § 1676 ("The Secretary of Labor ... shall enforce the provisions of this subchapter"). Accordingly, plaintiff has not alleged a plausible claim pursuant to 15 U.S.C. §§ 1673 and 1675 and these claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2) (B)(2).

**E. Claims Under the Americans with Disabilities Act**

Title 42 of the United States Code protects equal opportunities for individuals with disabilities and is commonly known as the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C. §§ 12101 *et seq.* The provision of the ADA invoked by plaintiff makes it unlawful to retaliate against an individual who opposed an act or practice made unlawful under the ADA, or to "coerce, intimidate, threaten, or interfere with any individual in the exercise" of rights granted by the ADA. See 42 U.S.C. § 12203. "A person need not prove that she is disabled to pursue a claim for retaliation." *Bahamonde v. Shepard*, 11-CV-5166, 2013 WL 2250209, *2 (E.D.N.Y. May 22, 2013). In order to allege a *prima facie* case of retaliation under the ADA the plaintiff must claim: "(1) engagement in an activity protected by the ADA; (2) defendant's awareness of that activity; (3) action adverse to the plaintiff, and (4) a causal connection between the protected activity and the adverse action." *Bahamonde*, 2013 WL 2250209, at *2 (citing *Weissman v. Dawn Jov Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (additional citations omitted)).

The complaint does not provide any allegations that would support finding a *prima facie* case for retaliation or any other claim under Section 12203 of the ADA. Accordingly, plaintiff's ADA claim is dismissed for failure to allege a plausible claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## F. Claims Under the Bankruptcy Code

Section 362(a) of Title 11 of the United States Code (the "Bankruptcy Code") provides for an automatic stay against "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...." 11 U.S.C. § 362(a)(1). As the complaint does not allege that plaintiff has filed a bankruptcy petition, this statute has no application and does not provide a basis for relief. Accordingly, plaintiff's claims pursuant to 11 U.S.C. § 362(a) are implausible and are thus dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## III. LEAVE TO AMEND

In light of the pleading deficiencies set forth above, the Court has considered whether plaintiff should be given an opportunity to re-plead. Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "This relaxed standard applies with particular force to pro se litigants." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999). The Second Circuit has emphasized that a "court should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' " *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

*7 Here, the deficiencies in plaintiff's claims pursuant to 11 U.S.C. § 362(a), 15 U.S.C. § 1675, 18 U.S.C. §§ 242, 245, 2382, 2382, 28 U.S.C. § 1652 and 42 U.S.C. § 12203, and plaintiff's Section 1983 claim against DSS, are substantive in nature and, as such, cannot be remedied by amendment. Accordingly, the court declines to grant plaintiff leave to file an amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as to these claims. In addition, because plaintiff's claims for relief against OTDA, Roberts, NYOID, Leahy, New York State Family Court System, Gov. Cuomo, NYAG Schneiderman, NYJRC, Klonik, Ruderman, Acosta, Belluck, Cohen, Corngold, Harding, Stoloff, Weinstein, Judge Hoffman, Magistrate Orlando, Magistrate Cherry, Court of Appeals of N.Y., and J. Lippman are barred from adjudication here by sovereign and/or judicial immunity, the court also declines to grant plaintiff leave to file an amended complaint as to these claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). As to any remaining claim or potential claim, a liberal reading of the complaint reveals no indication of any valid claim. Accordingly, the Court finds that amendment would be futile and denies plaintiff leave to amend.

## IV. CONCLUSION

For the reasons and to the extent set forth above, plaintiff's application to proceed *in forma pauperis* is granted, but the complaint is *sua sponte* dismissed. The Clerk of the Court is directed to close the case. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3181128

---

Footnotes

1   It appears that there is a child support enforcement action against Corrado in state court under Index No. 6746-10 *See D'Amico v. Corrado*, 15-CV-4846(SJF)(AYS) ("Corrado I"), Pet. for Removal, at 1 ("petition for removal from the 10[th] Judicial District Court of New York State County of Suffolk ... State court cause [sic] no.: 6746-10").

2   The caption of the complaint does not contain any titles for the individual defendants. The titles referenced by the Court are taken from Corrado's list of defendants on the Certification of Service. Compl., p. 13.

3   Plaintiff moved for reconsideration of the Remand Order. *See* Corrado I, DE [13]. By Order dated October 26, 2015, the motion for reconsideration was denied because, upon certification of the remand order, this Court divested itself of

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 31 of 47
Corrado v. New York Office of Temporary, Not Reported in F.Supp.3d (2016)
2016 WL 3181128

jurisdiction and thus was barred from further consideration of Corrado's case. *See* Corrado I at DE [27]. On November 13, 2015, Corrado filed a Notice of Appeal of the Court's denial of his motion for reconsideration.

4    All material allegations in the complaint are presumed to be true for the purpose of this Order, *see, e.g., Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 58 (2d Cir. 1998) (in reviewing a *pro se* complaint for *sua sponte* dismissal, a court is required to accept the material allegations in the complaint as true).

5    Plaintiff does not provide any further information in the complaint about those proceedings such as docket or index number, or procedural posture. Compl. at 1 and *passim.*

---

**End of Document**                                   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 32 of 47

Jones v. U.S. Dept. of Housing and Urban Development, Not Reported in F.Supp.2d...

2012 WL 1940845

2012 WL 1940845
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Frederick JONES, Plaintiff,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT; NYC Department of Housing
Preservation and Development; NYC Housing
Preservation and Development Division of Code
Enforcement; Allen Affordable Hdfc, Defendants.

No. 11 CV 0846(RJD)(JMA).
|
May 29, 2012.

**Attorneys and Law Firms**

Frederick Jones, Jamaica, NY, pro se.

Edward K. Newman, United States Attorneys Office,
Brooklyn, NY, Jasmine M. Georges, New York City Law
Department, New York, NY, for Defendants.

### MEMORANDUM & ORDER

DEARIE, District Judge.

 **\*1** This matter is *pro se* plaintiff's fourth lawsuit
in just over six years against some combination of
the same three defendants-United States Department
of Housing and Urban Development ("HUD"), New
York City Department of Housing Preservation and
Development ("HPD"), [1] and community based not-for-
profit, Allen Affordable HDFC ("Allen Affordable")—
alleging violations of federal and state law arising out
of the same underlying housing issue. Plaintiff now alleges an
assortment of claims, many of which have already been-or
could have been-litigated in past proceedings, but some of
which purportedly pertain to new violations of plaintiff's
rights under the Fair Housing Act ("FHA"), 42 U.S.C.
§ 3601, *et seq.,* False Claims Act ("FCA"), 31 U.S.C. §§
3729–3733, the Equal Protection and Due Process Clauses
of the Fourteenth Amendment, and various state laws
and regulations. Plaintiff also alleges that the federal
law violations give rise to claims under 41 U.S.C § 1983
("Section 1983"). Before the Court presently are HPD's

motion to dismiss for failure to state a claim upon which
relief may be granted and HUD's motion to dismiss for
lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1),
(6). For the reasons set forth below, HPD's and HUD's
motions are granted in their entirety. Although Allen
Affordable did not move to dismiss, the Court *sua sponte*
dismisses all claims brought against it.

### I. BACKGROUND

Familiarity with the general factual backdrop of this case
is assumed given the number of lawsuits filed by this
plaintiff against these same defendants relating to the
same underlying property. [2]

In brief, plaintiff is the last remaining tenant in a building
that was slated in 2006 for rehabilitation by HPD and
Allen Affordable pursuant to a federal grant program
administered by HUD. *See* ECF Docket # 1, Complaint
("Compl.") ¶ 4. Rehabilitation has since been stalled
both because of plaintiff's refusal to relocate during
renovations, as well as his ongoing complaints against
defendants HPD and Allen Affordable relating to poor
living conditions at his property. Plaintiff once again
seeks federal court intervention to remedy his housing
difficulties. Plaintiff's present complaint is long on legal
conclusions and short on facts. The thrust of plaintiff's
complaint seems to be that his current "substandard living
conditions" are the result of intentional discrimination
by defendants HPD and Allen Affordable. The claims
against HUD generally pertain to the federal agency's
alleged failure to ensure that HPD and Allen Affordable
comply with applicable HUD regulations and the FHA.
Plaintiff does not allege discrimination on the part of
HUD.

### II. DISCUSSION

HPD moves to dismiss under Federal Rule of Civil
Procedure 12(b) (6). In deciding such a motion, the Court
"must accept as true all of the factual allegations set
out in plaintiff's complaint, draw inferences from those
allegations in the light most favorable to plaintiff, and
construe the complaint liberally." *Gregory v. Daly,* 243
F.3d 687, 691 (2d Cir.2001). "A *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers." *Erickson v.*

Case 6:18-cv-01402-GLS-TWD Document 10 Filed 01/08/19 Page 33 of 47

Jones v. U.S. Dept. of Housing and Urban Development, Not Reported in F.Supp.2d...

2012 WL 1940845

*Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted). HUD has moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. "After [c]onstruing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.* 426 F.3d 635, 638 (2d Cir.2005) (internal citations and quotations omitted) (modification in original). As with 12(b)(6) motions, when adjudicating Rule 12(b) (1) motions the court holds pro se litigants "to less stringent standards." *See Erickson,* 551 U.S. at 94.

**\*2** Allen Affordable has not moved to dismiss. A "district court has the power to dismiss a complaint *sua sponte* for failure to state a claim so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. Cnty. of Herkimer.* 35 F.3d 77, 82 (2d Cir.1994) (affirming *sua sponte* dismissal of defendant who never appeared or moved for dismissal where plaintiff was given notice that other defendants were moving to dismiss and had responded with an opposition memorandum) (internal quotations and citations omitted). *Sua sponte* dismissal is appropriate where, as here, plaintiffs claims against a non-appearing defendant, Allen Affordable, parallel those claims made against an appearing defendant, HPD. *See Hecht v. Com. Clearing House, Inc.,* 897 F.2d 21, 26 n. 6 (2d Cir.1990) ("*Sua sponte* dismissal of the complaint with respect to [non-appearing defendant] is appropriate here, because the issues concerning [non-appearing defendant] are substantially the same as those concerning the other defendants, and [plaintiff] ... had notice and a full opportunity to make out his claim against [non-appearing defendant]."); *Rodriguez v. Mt. Vernon Hosp.,* No. 09 Civ. 5691(GBD)(JLC), 2011 WL 3874814, at \*2 (S.D.N.Y. Sept. 2, 2011) (Daniels, J.) (dismissing claim *sua sponte* where claims against private defendant "ar[o]se out of the same conduct that underl[ay] [plaintiff's] claim against the State Defendants").

### A. Claims Against HPD and Allen Affordable Barred by Res Judicata

Under the doctrine of *res judicata,* "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.,* 400 F.3d 139, 141 (2d Cir.2005)

(internal quotations omitted). Accordingly, all of plaintiffs claims against HPD and Allen Affordable pertaining to plaintiff's termination as building superintendent are barred because they either were, or could have been raised before this Court in plaintiff's 2009 lawsuit. *See* Compl. ¶¶ 13, 15, 28. It is immaterial that plaintiff has restyled his termination allegations as claims under the Vietnam Era Veteran's Readjustment Assistance Act of 1974. *See id.* ¶¶ 15, 28. "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line New York,* 295 F.3d 204, 205 (2d Cir.2002) (internal quotations omitted). Likewise, plaintiff's claim that HPD, through its attorney, made a false statement in a proceeding before Judge Preska in the course of litigating plaintiff's first case in 2006, Comply ¶ 14, could also have been raised in plaintiff's complaint before this Court in 2009. Plaintiff's claim against Allen Affordable for improperly "attempt[ing] to evict plaintiff and residents," *id.* ¶ 25, is also barred because it could have been raised at any of plaintiff's earlier proceedings.

**\*3** Though a close call, the remainder of plaintiff's claims against HPD and Allen Affordable are not barred by *res judicata.* Liberally construing *pro se* plaintiff's complaint, this Court finds that the regulatory violations and current living conditions complained of are the result of allegedly new episodes of discriminatory conduct. *See Waldman v. Vill. of Kiryas Joel,* 207 F.3d 105, 113 (2d Cir.2000) ("*[R]es judicata* will not bar a suit based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts.") (emphasis in original). Mindful that application of *res judicata* "must be given a flexible, common-sense construction that recognizes the reality of the situation," *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 91 (2d Cir.1997), plaintiff's remaining claims are not barred by *res judicata.* They are, however, barred for failure to state a claim upon which relief may be granted.

### B. Non-barred Claims Against Defendants HPD and Allen Affordable

#### 1. Fair Housing Act

Plaintiff makes various allegations that the Court reads to concern HPD and Allen Affordable's "fail[ure] to assure the plaintiff ... will receive and enjoy the benefits, services and entitlements pursuant to the [FHA]." Compl. ¶ 18. Specifically, plaintiff alleges that HPD and

Case 6:18-cv-01402-GLS-TWD   Document 10   Filed 01/08/19   Page 34 of 47

Jones v. U.S. Dept. of Housing and Urban Development, Not Reported in F.Supp.2d...

2012 WL 1940845

Allen Affordable have sanctioned "substandard living conditions" at his residence, including lack of heat, hot water, a working refrigerator, and lighting, *id.* ¶¶ 9–11, have failed to enforce the NYC Housing Maintenance Code at his residence, *id.* ¶¶ 22–24, 26, and have failed to comply with HUD federal regulations with regard to his residence. [3] *Id.* ¶¶ 12, 17, 27–28. Although plaintiff does not cite to any specific provision of the FHA, the one provision bearing on plaintiff's claims provides:

> [I]t shall be unlawful ... [t]o discriminate against any person ... in the provision of services or facilities in connection [with the "sale or rental of a dwelling"] because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b). Plaintiff's mere legal conclusion that HPD and Allen Affordable have "intentionally deprived plaintiff ... [of] benefits, goods, services, and entitlements, and due process protections based on race, color, disability, age, veteran status, and class" is insufficient to survive a motion to dismiss under Rule 12(b)(6). Compl. ¶¶ 20, 30.

It is true that an "[FHA] violation can be established without proof of discriminatory intent." *Huntington Branch, N.A.A.C.P. v. Town of Huntington,* 844 F.2d 926, 935 (2d Cir.1988), *aff'd,* 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988). Indeed, "[a] plaintiff in stating a claim under the FHA need allege only discriminatory effect ...." *Soules v. U.S. Dep't of Hous. & Urban Dev.,* 967 F.2d 817, 822 (2d Cir.1992) (internal quotations omitted). To make out a "disparate treatment" claim [4] under Section 3604(b) of the FHA, however, plaintiff would still ultimately be required to meet the burden-shifting framework set forth by the Supreme Court in in *McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which at the very least would demand an allegation of "differential treatment of similarly situated persons or groups." *Huntington.* 844 F.2d at 933; *see Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1037–38 (2d Cir.1979) (adopting Title VII *McDonnell* test for disparate treatment claims under the FHA). Although plaintiff is not required to satisfy this *prima facie* burden at the pleading stage, *see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), any disparate treatment claim will ultimately fail because plaintiff is the *only* remaining tenant in his dwelling. Under no circumstance will plaintiff be able to make the minimal required showing under the FHA "that

a member of a statutorily protected class was ... not provided the same 'services or facilities in connection [with the sale or rental of a dwelling]' made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination." [5] *Estrella v. Sucuzhanay,* No. 10–CV–3650 (NGG)(LB), 2011 WL 5156285, at *3 (E.D.N.Y. Oct. 28, 2011) (Garaufis, J.) (quoting 42 U.S.C. § 3604(b)).

**\*4** What is more, plaintiff's own filings submitted to this Court—previously and with regard to the instant action—belie his claims of being singled out or treated differently on a discriminatory basis by defendants HPD or Allen Affordable. Plaintiff appended to his instant complaint communications from HPD regarding heat and hot water issues, which show that HPD has, in fact, been responsive to plaintiff's complaints: in late 2010, HPD even issued violations and instituted a lawsuit against Allen Affordable in response to plaintiff's complaints. *See* Compl. at pgs. 18–19. Moreover, in plaintiff's 2009 complaint, plaintiff stated that prior to relocation, the residents of the subject property were "African American, Latinos and [individuals of] European decent ... [and] seniors, disabled, and children." 09–CV–2104, ECF Docket # 1, Complaint ¶¶ 7–8. Plaintiff's 2009 complaint alleged improper treatment on the part of HPD and Allen Affordable against *all* of these concededly diverse tenants, without regard to background or status. *See generally id.* The fact that defendants' action or inaction now happens to disproportionately impact plaintiff is plaintiff's own doing, and not the result of discriminatory animus: Mr. Jones decided to stay put while all of the other tenants agreed to be relocated by the city pending the building's rehabilitation, a process which has long been stalled by plaintiff's hold-out status.

Plaintiff's FHA claims against HPD and Allen Affordable, therefore, are dismissed for failure to state a claim for relief.

### 2. False Claims Act

Plaintiff alleges that HPD and Allen Affordable violated the FCA. Compl. at 1. To plead a violation of the FCA, the plaintiff "must show that defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Mikes v. Straus,* 274 F.3d 687, 695 (2d Cir.2001). To this end, plaintiff makes

Case 6:18-cv-01402-GLS-TWD   Document 10   Filed 01/08/19   Page 35 of 47

Jones v. U.S. Dept. of Housing and Urban Development, Not Reported in F.Supp.2d...

2012 WL 1940845

three separate allegations, all of which are conclusory and without merit.

First, plaintiff claims that HPD's alleged role in allowing for "substandard living conditions ... constitutes Fraud [sic] and false certification." Compl. ¶¶ 9–12. Absent from this particular claim, however, is any allegation that HPD "made a claim ." Second, plaintiff claims that both HPD and Allen Affordable "failed to file a[sic] annual reports [sic] to Secretary of Labor [sic] regarding compliance with Affirmative action programs for disabled veterans ...." *Id.* ¶¶ 15, 28. Again, plaintiff alleges that this "conduct constitutes fraud and false certification." *Id.* ¶¶ 16, 29. Here too there is no allegation that any claim was made; to the contrary, the complaint itself alleges that HPD and Allen Affordable "*failed to file ... annual reports.*" *Id.* ¶ 15, 28 (emphasis added). Third and lastly, plaintiff claims that "HPD and Allen Affordable ... continue to apply and request money from the U.S. treasury, while failing to submit accurate certifications pre requisites, [sic] This [sic] is fraud and false certification to fraud the government." Id 31. HPD correctly points out that the complaint is devoid of "any allegation concerning what form the alleged misrepresentation took, when it occurred, who made it, to whom it was made, or even how the alleged misrepresentation related to claims for funds relating to HPD's Neighborhood Redevelopment Project." ECF Docket # 20, HPD Memorandum in Support of Motion to Dismiss at 13. This claim must be dismissed because it fails to satisfy even the forgiving notice pleading standards of Rule 8, let alone the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b). *See Gold v. Morrison–Knudsen Co.,* 68 F.3d 1475, 1476–78 (2d Cir.1995) (holding that FCA claims must comply with Rule 9(b)).

### 3. Equal Protection

**\*5** Plaintiff's complaint can also be read to allege a violation of the Equal Protection Clause of the Fourteenth Amendment, ostensibly predicated upon differential treatment based on "race, color, disability, age, veteran status, and class," Compl. ¶ 20. This claim must be dismissed as a matter of law because plaintiff has failed adequately to allege that a "government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta,* 221 F.3d 329, 337 (2d Cir.2000). As discussed *supra,* Part II.B.1, plaintiff cannot even satisfy the lesser standards required to make out a "disparate treatment" claim.

### 4. Procedural Due Process

Plaintiff's complaint may also be read to claim a violation by the HPD of his procedural due process rights. *See* Compl. ¶ 20 ("HPD has intentionally deprived plaintiff ... [of] due process protections ..."). Where, as here, plaintiff alleges state action that is not the "result of some established state procedure," *Parratt v. Taylor,* 451 U.S. 527, 541, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), but rather the result of "random, unauthorized conduct," a post-deprivation remedy "is all the process the State can be expected to provide, and is constitutionally sufficient." *Zinermon v. Burch,* 494 U.S. 113, 115, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Assuming—without deciding—that plaintiff has suffered a deprivation of a property interest as a result of state action in this case, plaintiff's procedural due process claims must be dismissed as a matter of law because of the availability—and adequacy —of an Article 78 proceeding under New York State law to address a tenant's claims of building mismanagement. *See Katz v. Klehammer,* 902 F.2d 204, 207 (2d Cir.1990) ("To the extent that the Housing Law and state and city regulations compel the supervising and other city officials to perform certain acts, Article 78 may thus serve to enforce such requirements when officials fail to fulfill these obligations.") (citing N.Y. C.P.L.R. 7801 (McKinney 1981)).

### 5. Section 1983

"It is well settled that § 1983 does not create any new substantive rights, but merely provides a federal cause of action for violations of certain federal rights." *Mrs. W. v. Tirozzi,* 832 F.2d 748, 754 (2d Cir.1987). Because I have already concluded that plaintiff has failed to allege a viable claim of any violation of any federal law, plaintiff's claims under Section 1983 are dismissed as a matter of law.

### C. Claims Against HUD

Plaintiff alleges that HUD "failed to require," per agency regulations, HPD and Allen Affordable "to submit a[sic] annual performance report" and a filing concerning analysis, improvement, and record-keeping to HUD. Compl. ¶¶ 5–6, 8. Plaintiff further claims that by making grants to HPD and Allen Affordable, HUD violated its own regulations, which allow for grantmaking "only if

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 36 of 47

Jones v. U.S. Dept. of Housing and Urban Development, Not Reported in F.Supp.2d...

2012 WL 1940845

grantees make" the above-stated submissions. Compl. ¶ 8. Plaintiff additionally alleges broader failures on the part of HUD to "enforce compliance with the FHA and related authorities" and "to take appropriate actions to overcome the effects of impediments" to the redevelopment project that has plagued plaintiff's residence. Compl. ¶¶ 6–7. All of these claims, however, must be dismissed for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

**\*6** While it is true that the Administrative Procedures Act ("APA"), which plaintiff invokes in his complaint, Compl. at pg. 1, waives the sovereign immunity of the United States and provides a statutory right of judicial review to plaintiffs "suffering legal wrong because of agency action," 5 U.S.C. § 702, the APA only allows suits to remedy agency action [6] when "there is no other adequate remedy in a court." 5 U.S.C. § 704. As already discussed, *supra* note 3, the FHA expressly provides for a private right of action in federal court against the alleged perpetrators of discriminatory practices, 42 U.S.C. § 3613. Accordingly, several courts in and outside of this circuit have ruled that the FHA provides an "other adequate remedy in a court," barring judicial review under the APA. *See, e.g., Marinoff v. U.S. Dep't of Hous. & Urban Dev.,* 892 F.Supp. 493, 497 (S.D.N.Y.1995) (adopting report and recommendation), *aff'd* 78 F.3d 64 (2d Cir.1996); *Turner v. Sec'y of the U.S. Dep't of Hous. & Urban Dev.,* 449 F.3d 536, 540 (3d Cir.2006); *Godwin v. Sec'y of Hous. & Urban Dev.,* 356 F.3d 310, 312 (D.C.Cir.2004) (per curiam). Here, plaintiff can—and indeed *has*—brought his action directly against the actual alleged perpetrators of housing discrimination under the FHA. Bringing an action against HPD and Allen Affordable—whether or not relief is ultimately granted—"is not only sensible but is also fully consistent with-and in some cases even necessary to-the orderly enforcement of the statute." *Cannon v. Univ. of Chi.,* 441 U.S. 677, 705–06, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (interpreting Title IX). Because plaintiff "ha[s] an adequate alternative legal remedy against someone else" the Court "may not ... entertain the claim against the agency ...." *N.Y.C. Emp. Ret. Sys. v. S.E.C.,* 45 F.3d 7, 14 (2d Cir.1995). Plaintiff's APA claim against HUD is, therefore, dismissed for lack of subject matter jurisdiction.

### D. Pendant State Law Claims

Plaintiff brings an assortment of state law claims against HPD and Allen Affordable. As all parties are domiciled in New York State, the Court cannot exert diversity jurisdiction pursuant to 28 U.S.C. § 1332. Because I have dismissed all of plaintiff's claims under federal law, the Court no longer retains jurisdiction over the matter and any potential state law claims are hereby dismissed without prejudice. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367(c)(3).

### E. Leave to Amend

Although leave to amend "should [be] freely give[n] ... when justice so requires," Fed.R.Civ.P. 15(a)(2), and "particularly ... where the complaint is filed by a *pro se* litigant," *Narumanchi v. Fed. Emergency Mgmt. Agency,* 201 F.3d 432, 432 (2d Cir.1999) (Table), the Court is unwilling to afford plaintiff a *fifth* bite at the apple. The Court is not insensitive to the clear emotional toll that the city's intended rehabilitation project has taken on Mr. Jones. In the words of the great American poet, Maya Angelou: "The ache for home lives in all of us, the safe place where we can go as we are and not be questioned." Mr. Jones seems sincerely concerned about change and fearful that his home, his own "safe place," might be improperly taken from him. The Court appreciates this concern and expects that the city and all parties involved in the rehabilitation of his residence will move forward expeditiously and professionally so that Mr. Jones, and all of the residents who have now been displaced for years, can return home to adequate and safe housing. This will only be able to happen, however, if Mr. Jones allows the authorities to do their job.

**\*7** Plaintiff's repetitive and meritless filings have taken up valuable time, resources, and energy and have only served to delay that which plaintiff ultimately seeks. Plaintiff should be aware that the Court is empowered to issue "an injunction prohibiting [plaintiff] from filing future complaints ... without first obtaining permission from a judge" of the federal court in which such future complaint may be filed and/or to impose sanctions, including monetary penalties. *See Malley v. N.Y.C. Bd. of Educ.,* 112 F.3d 69, 69 (2d Cir.1997) (affirming district court's issuance of injunction barring repetitive proceedings); *Maduakolam v. Columbia Univ.,* 866 F.2d 53, 56 (2d Cir.1989) (holding that Rule 11 sanctions "appl[y] both to represented and *pro se* litigants"). The Court will refrain from taking such action for now, but enough is enough. Mr. Jones would be well-advised to limit his submissions to this or any other Court.

Jones v. U.S. Dept. of Housing and Urban Development, Not Reported in F.Supp.2d...

2012 WL 1940845

### III. CONCLUSION

HPD's and HUD's motions to dismiss are granted in their entirety. Plaintiffs claims against defendant Allen Affordable are dismissed *sua sponte.* All of plaintiff's federal law claims are dismissed with prejudice. Plaintiffs pendant state law claims are dismissed without prejudice.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 1940845

Footnotes

1    HPD's Division of Code Enforcement, a named defendant, is a subdivision of HPD. HPD, in turn, is a non-suable agency of the City of New York. *See* N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except when otherwise provided by law."). Because plaintiff is proceeding *pro se,* the Court will construe plaintiffs complaint against HPD as a claim against the City of New York, yet still refer to HPD as such.

2    In 2006, plaintiff sued HUD, HPD, and Allen Affordable in the Southern District of New York for their failure to provide adequate relocation assistance and comply with federal and state housing laws. Judge Loretta Preska first granted HUD's and HPD's motions to dismiss under Rules 12(b)(1) and 12(b)(6), and later granted Alien Affordable's motion for summary judgment. *See Jones v. Dep't of Hous. Preserv. & Dev.,* No. 06 Civ.2085(LAP), 2007 WL 582751 (S.D.N.Y. Feb.22, 2007); *Jones v. Dep't of Hous. Preserv. & Dev.,* No. 06 Civ.2085(LAP), 2008 WL 5155725 (S.D.N.Y. Dec.8, 2008). Plaintiff then sought relief in 2008 in New York Supreme Court against HPD, making new and additional allegations concerning HPD's failure to comply with federal, state, and local laws with regard to the property's inclusion in the Neighborhood Redevelopment Program ("NRP"), but the petition was dismissed as time-barred. *See Jones v. Dep't of Hous. Preserv. & Dev.,* Index No. 1059/08 (N.Y.Sup.Ct. May 22, 2008). Finally, plaintiff brought an action in 2009 before this Court, raising claims against HPD and Allen Affordable regarding the distribution of federal funds relating to the property's inclusion in the NRP, the termination of plaintiff as superintendent of the building, and again, HPD's enforcement of the New York City Housing Maintenance Code. This Court granted HPD and Allen Affordable's motions to dismiss under Rules 12(b)(1) and 12(b)(6). *See Jones v. Dep't of Hous. Preserv. & Dev.,* No. 09–CV–2104 (RJD)(LB), 2010 WL 3942996 (E.D.N.Y. Sept. 30, 2010).

3    Plaintiff has no independent authority to sue HPD or Allen Affordable for violations of HUD regulations. The FHA does, however, expressly provide a private right of action to any "aggrieved person ... to obtain appropriate relief with respect to ... [a] discriminatory housing practice or breach." 42 U.S.C. § 3613. A "discriminatory housing practice," in turn, is defined, in part, as "an act that is unlawful under section 3604," 42 U.S.C. § 3602(f), which, as will be described *infra,* requires proof of at least discriminatory treatment.

4    This is decidedly not a case involving a claim of "disparate impact," where "[a] plaintiff alleges that an entire class or category of minorit[ies] ... are adversely affected by [a] ... facially neutral policy ...." *Hudson v. Int'l Bus. Machines Corp.,* 620 F.2d 351, 355 (2d Cir.1980). In individual "disparate treatment" actions like this one, the particular plaintiff "must establish that he has been discriminated against." *id.*

5    Nor has plaintiff alleged or identified "a comparator" outside of his residence "against which his own treatment should be judged." *Bunn v. City of Poughkeepsie,* No. 10 Civ. 2297(PAE), 2012 WL 1621563, at *3 (S.D.N.Y. May 9, 2012) (Engelmayer, J.).

6    *See* 5 U.S.C. § 551(13) ("[A]gency action includes ... *failure to act* ") (emphasis added); 5 U.S.C. § 701(b)(2) (' "[A]gency action' ha [s] the meaning[ ] given [to it] by section 551 of this title").

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 38 of 47

UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)

2018 WL 6702852

2018 WL 6702852
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

UNITED STATES OF AMERICA, ex rel.

ANTHONY BENNETT, Plaintiffs/Relator, [1]

v.

STEVEN T. MNUCHIN et al., Defendants.

6:18-CV-1403 (TJM/ATB)
|
Filed 12/20/2018

**Attorneys and Law Firms**

ANTHONY BENNETT, Plaintiff Pro Se

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter U.S. Magistrate Judge

**\*1** The plaintiff in this sealed action has filed a civil complaint against defendants pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. (Dkt. No. 1). Plaintiff has also filed an application to proceed in forma pauperis ("IFP"), and a motion for appointment of counsel. (Dkt. No. 3, 6).

**I. IFP Application**
Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate

to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

**II. Facts**
The plaintiff has sued a variety of defendants, including Steven T. Mnuchin, the United States Treasury Secretary; Scott M. Stringer, New York City Comptroller; Richard A. Brown, "District Attorney;" John B. Latella, "Administrative Judge;" Audrey Pheffer, "County Clerk;" Barbara D. Underwood, New York State Attorney General; Anthony Annucci, Commissioner of the Department of Corrections and Community Supervision ("DOCCS"); Diane Davis, United States Bankruptcy Judge; and Deborah J. McCullock, Executive Director of the Central New York Psychiatric Center ("CNYPC"). (Petition/Complaint ("Compl.") at 1, CM/ECF p.7) [2] (Dkt. No. 1).

**\*2** The plaintiff identifies himself as a "Third Party Intervener on behalf of Anthony Bennett Estate." [3] (*Id.*) The complaint criticizes the actions of Northern District of New York Bankruptcy Judge Diane Davis. Plaintiff claims that Judge Davis improperly dismissed his

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 39 of 47

UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)
2018 WL 6702852

"involuntary" bankruptcy petition. (Compl. *generally*). Plaintiff states that Judge Davis and the Clerk of the Court had a "predetermined decision ready on paper to deprive Plaintiff(s) ... of the Property of the Estate ...." (Compl. at 2). Plaintiff states that he sent a "Certificate of Protest and attachments and Writ of Execution ... for filing and registration ...." (*Id.*) Plaintiff states that when he received no response from the Bankruptcy Court in Utica, he filed a " 'Bill in Equity' " because of the "fraud and deceit of the Court." (*Id.*) Plaintiff states that the Bankruptcy Court has failed to respond to any of plaintiff's submissions, and he "respectfully demand[s]" an investigation of the "entire Court record and Policy and Procedure in the form of Discovery ...." (*Id.*) (emphasis in original). Plaintiff claims that Judge Davis violated her oath of office, has issued "void orders," and predetermined plaintiff's decision, in contravention of all laws and procedures. (*Id.*)

Plaintiff states that he has "Noticed" the President of the United States by certified mail. (Compl. at 4). Plaintiff then turns to a discussion of the Internal Revenue Service ("IRS"), stating that the "only thing that can create a debt with the IRS is the assessment." (*Id.*) Plaintiff appears to state that in filing his "involuntary" bankruptcy petition, he was seeking to meet with a trustee from the Department of Justice, who could assist him with some IRS "liability." (Compl. at 5). Plaintiff then states that he had stated his "intent" to pay all of his assessed taxes and pay all "proven" liabilities, but he would bring an action for "fraud" against anyone filing a "proof of claim unaccompanied by evidence of a debt, obligation, or liability." (*Id.*)

Plaintiff also alleges that Judge Davis and her clerk violated a variety of other federal statutes, including sections of the criminal law. (Compl. at 7-13). The complaint contains a section for "Claims," followed by two "Counts." (*Id.* at 7-11, 11-13). In addition to the False Claims Act, plaintiff has alleged violations of 18 U.S.C. § 1001 (false statements); 18 U.S.C. §§ 241 and 242 (criminal civil rights violations);[4] the U.S. Patriot Act and Bank Secrecy Act;[5] the "New York Securities Act & Investment Advisors Act;" and 18 U.S.C. § 1956 (laundering of monetary instruments).

Plaintiff's exhibits include a "Stipulation of Discontinuance," dated August 16, 2018, signed by Christopher J. Wagner, Esq. of the Mental Hygiene Legal Services, and attorney for plaintiff and "so-ordered" by

the Honorable Walter W. Hafner, County Court Judge. (Compl. Exh. A at CM/ECF 20-22). Plaintiff has attached a lengthy affidavit to Exhibit A, which consists of stream-of-consciousness statements that may or may not mean something to the plaintiff.[6] (Compl. at CM/ECF 24-38). The complaint includes another exhibit which appears to be a July 17, 2018 receipt from the Data Processing Unit of the Uniform Commercial Code Division of the New York Department of State, acknowledging the filing of a "financing statement" by plaintiff. (Compl. Exh. B at 1, CM/ECF 39). Plaintiff has also attached a copy of the "financing statement" itself, which lists the "collateral" as a "Certificate of Protest ... for $100,000,000.00 / USD." (Compl. Ex. B at 2, CM/ECF at 40).

**\*3** Plaintiff has attached the documents that he filed in the Northern District of New York Bankruptcy Court, labeled "Petition to Intervene." (Compl. Ex. C at CM/ECF 42-45). Plaintiff states that he is the "Third Party Intervenor," who claims an interest in the entire case. (Compl. at CM/ECF 42). Plaintiff has also attached the "Order to Show Cause," issued by Judge Davis. (Compl. Exh. CD, CM/ECF at 46). The order indicates that the plaintiff's action was subject to dismissal for failure to pay the filing fee and noncompliance with "the involuntary filing requirements set forth in 11 U.S.C. § 303 (b)." (*Id.*) Plaintiff was ordered to appear at the Federal Court House in Utica on October 23, 2018. (*Id.*) Judge Davis dismissed the action on November 2, 2018 "for the reasons stated on the record." (Compl. Exh. E, CM/ECF at 47).

The next exhibit is a receipt of plaintiff's claim against the City of New York, dated February 9, 2018. (Compl. Exh. F at CM/ECF 48). The claim was acknowledged by the Comptroller of the City of New York. The receipt states that plaintiff's claim was "under investigation." (*Id.*) The plaintiff's next exhibit is the Comptroller's response to plaintiff's claim. (Compl. Ex. G, CM/ECF at 49). The response is dated February 14, 2018 and states that plaintiff's "International Bill of Exchange," presented to the Queens County Supreme Court, did not state a claim under New York's Administrative Code. (*Id.*) Plaintiff's Exhibit H is an affidavit that he sent to the Bankruptcy Court. (Compl. Exh. H, CM/ECF at 50-51).

Plaintiff has also included a document, dated February 6, 2018, which is not listed as a separate exhibit. (CM/ECF at 52-55). This document includes an "Assessment of Admitted Damages." (*Id.*) It appears that this was

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 40 of 47

UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)

2018 WL 6702852

one of the documents that plaintiff submitted to the Queens County Supreme Court. Finally, plaintiff includes a "Beneficiary/Estate Price List." (*Id.* at 56). This document includes typewritten violations, listed under the heading "Product or Service." (*Id.*) Each violation contains a "Product Number" and a "Price" listed. There are handwritten check marks next to several of the violations. [7] (*Id.*)

### III. Qui Tam/Representation

#### A. Legal Standards

The FCA contains a "qui tam" provision authorizing private citizens, called "relators," to sue on behalf of the United States government to recover treble damages from those who knowingly make false claims for money or property upon the Government or who knowingly submit false statements in support of those claims or to avoid the payment of money or property to the Government. *See* 31 U.S.C. § 3730(b).

In order to bring an action under the FCA, the relator must file the complaint under seal and give the government an opportunity to intervene. *Id.* § 3730(b)(2). The Government then has an initial period of 60 days to decide whether to intervene. *Id.* If the Government chooses not to intervene, the relator may proceed on the Government's behalf and, in either case, the relator is entitled to a percentage of any award received. 31 U.S.C. §§ 3730(c)(3); 3729(d).

#### B. Application

Plaintiff has brought this action under the FCA. However, the Second Circuit has specifically held that qui tam plaintiffs may not proceed pro se. *Berger v. New York State Office for People with Developmental Disabilities*, No. 6:16-CV-1277, 2018 WL 1444213, at *5 (N.D.N.Y. Mar. 22, 2018) (citing *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008)); *See also Byrd v. Mazzola Ins. Corp.*, No. 6:17-CV-6178, 2017 WL 5508814, at *4 (W.D.N.Y. Apr. 5, 2017) (citing *Palmer v. Fannie Mae*, No. 14-CV-4083, 2016 WL 5338542, at *4 (E.D.N.Y. Sept. 23, 2016)).

**\*4** In *U.S. ex rel. Mergent Services*, the court stated that in a qui tam action, the Government remains the real party in interest, even though the relator has a stake in the outcome. 540 F.3d at 93. Because the Government is

the real party in interest, it is not the relator's "own case." *Id.* (citations omitted). It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. [8] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654. This court could have recommended dismissal of the action on this basis alone. However, plaintiff has moved for appointment of counsel (Dkt. No. 6), and therefore the court will continue its analysis.

### IV. Appointment of Counsel

#### A. Legal Standards

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or

Case 6:18-cv-01402-GLS-TWD   Document 10   Filed 01/08/19   Page 41 of 47
UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)

2018 WL 6702852

indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

**B. Application**

As stated above, plaintiff may not bring this qui tam action pro se. Plaintiff now asks for an attorney. Thus, the court will proceed to the full analysis of plaintiff's counsel motion. Normally, the court would have denied the plaintiff's motion for appointment of counsel because he has failed to show that he attempted to find counsel on his own before asking the court for an attorney. *See Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge*, 802 F.2d at 61) (prior to evaluating a request for appointment of counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms). However, even if plaintiff had tried to find counsel on his own, as this court will discuss below, the complaint does not have substance and cannot meet the first requirement for appointment of counsel.

**1. Rule 8**

**a. Legal Standards**

**\*5** The Federal Rules of Civil Procedure require that a complaint contain " 'a short and plain statement of claim showing that the pleader is entitled to relief,' and that each averment be 'concise and direct.' " *Whitfield v. Johnson*, No. 18-CV-1232, 2018 WL 1385890, at \*2 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quoting Fed. R. Civ. P. 8(a)(2), 8(d)(1)).

**b. Application**

The court is well-aware that pro se pleadings must be read to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). In this case, even if read liberally, plaintiff's complaint fails to give the defendants fair notice of plaintiff's claims and fails to allege facts against each individual named in the caption of the complaint. The complaint is extremely difficult to read, and other than his claims against Judge Davis and her staff, he says very little about any of the other defendants. When he does mention the other defendants, plaintiff simply states that they violated various statutes without providing a factual basis for his allegations or explaining how the specific defendant was involved in the alleged violation. Thus, the complaint violates Rule 8. The court will also discuss what it believes to be the specific claims that plaintiff is attempting to raise.

**2. Qui Tam/Substance**

In a qui tam action, the plaintiff is seeking to vindicate rights belonging to the federal government. *See Byrd v. Mazzola Ins. Corp.*, 2017 WL 5508814, at \*4. This plaintiff is clearly attempting to vindicate his own rights, whatever they may be. Plaintiff states in "Count I" that defendants have "presented or caused to be presented to an officer or employee of the government false or fraudulent claims for payment in [the] form of Penal Bonds unbeknowance [sic] to the Plaintiff, and illegally charging the Constructive Trust." (Compl. at 11).

Plaintiff has taken the words of the statute and has added the allegations that "defendants" engaged in the acts described in the statute. These allegations are without any basis, even in his own description of the defendants' conduct. There is no indication that Judge Davis or any of the other defendants, including the United States Treasury Secretary presented a "Penal Bond" [9] for payment by the federal government or asked for any other payment from the federal treasury. Thus, plaintiff does not state a qui tam claim.

**3. Absolute Immunity**

**a. Legal Standards**

**\*6** With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson*

UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 42 of 47

2018 WL 6702852

*v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" - whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13).

### b. Application

In this case, plaintiff has named Northern District of New York Bankruptcy Court Judge Diane Davis [10] and Acting Queens County Supreme Court Justice John B. Latella as defendants. Plaintiff alleges that Bankruptcy Judge Davis improperly dismissed plaintiff's "involuntary" bankruptcy petition. (Compl. *generally*). Plaintiff explains why he believes that Bankruptcy Judge Davis and her staff failed to properly handle plaintiff's petition, and alleges that the actions and inactions of the court rose to the level of "fraud and deceit." (*See* Compl. at 1-3, CM/ECF pp.7-9). Plaintiff claims that Judge Davis acted improperly when she failed to serve "proper notice" and

dismissed plaintiff's petition, knowing that he could not appear in court for her "order to show cause," without an "order to produce." [11] (Compl. at 6, CM/ECF p. 12).

**\*7** In another section of the complaint, plaintiff alleges that Judge Davis and her court clerk violated 11 U.S.C. § 303(g), (h), and (j) and 18 U.S.C. § 1001 because they did not preserve the "property of the estate" by appointing an "interim trustee under Section 701 of this Title ... to take possession of the property of the estate and to operate any business of the debtor." (Compl. at 8, CM/ECF at 14).

To the extent that the court can discern what plaintiff's claims might be because most of plaintiff's statements are beyond comprehension, all of the actions described by plaintiff occurred while Judge Davis was presiding over a petition filed by plaintiff in Bankruptcy Court. Judge Davis is therefore, entitled to judicial immunity from suit. Because plaintiff has not stated a qui tam claim against Judge Davis, there is no other jurisdictional basis listed in plaintiff's complaint for bringing an action against the judge. Plaintiff could attempt to sue Judge Davis (a federal actor) for constitutional violations under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (suits against individual federal officials for alleged constitutional violations are brought pursuant to *Bivens*). However, Judge Davis would be entitled to absolute immunity, whatever the basis for the lawsuit.

The same would be true for Justice John Latella. [12] First, plaintiff states that Judge Latella is an "administrative judge." [13] However, Judge Latella an Acting Supreme Court Justice in Queens County, listed under "Criminal Court Judges," and his name is John B. Latella, Jr. https://www1.nyc.gov/site/acj/appointed/criminal-court.page#latella. Judge Latella would be entitled to absolute immunity for any actions he took while presiding over a case involving the plaintiff. However, plaintiff does not explain what actions Judge Latella took that plaintiff claims violated any laws. Therefore, the following discussion would also apply to any claims that plaintiff is attempting to bring against Judge Latella which would not involve his actions as a judge presiding over a case involving the plaintiff. [14]

UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)

2018 WL 6702852

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 43 of 47

#### 4. Criminal Statutes

##### a. Legal Standards

**\*8** Crimes are prosecuted by the government, and not by private parties. *Corrado v. New York Office of Temporary and Disability Assist.*, No. 15-CV-7316, 2016 WL 3181128, at \*5 (E.D.N.Y. June 2, 2016) (citing *Hill v. Didio*, 191 F. App'x 13, 14-15 (2d Cir. 2006). There is no private right of action to enforce federal criminal statutes, unless the statute specifically authorizes it. *Id.* (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) (citations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)). This applies to both state and federal criminal statutes. *See Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at \*11-12 (S.D.N.Y. Feb. 6, 2011) (citing *inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL 1560164, at \*8 (E.D.N.Y. June 2, 2009) (dismissing civil suit for perjury because there is no private right of action for perjury under New York Law)).

##### b. Application

Plaintiff alleges that defendants have violated 18 U.S.C. § 1001 (false statements), 18 U.S.C. §§ 241 and 242 (criminal civil rights violations), and 18 U.S.C. § 1956 (money laundering). Section 241 is "Conspiracy against rights" and section 242 is "Deprivation of rights under color of law." *Id.* Section 1001 involves false statements "in any matter within the jurisdiction of the "executive, legislative, or judicial branch of the Government of the United States ...." Section 1956 makes it a crime to conduct a financial transaction with money that the defendant knows to be the proceeds of unlawful activity, with the intent to continue or promote the unlawful activity, hide the unlawful nature of the funds, avoid currency transaction reporting requirements, or with the intent of violating certain IRS code sections. [15] 18 U.S.C. § 1956.

All of these statutes provide for criminal penalties, and there is no language in any of the criminal statutes cited by plaintiff, authorizing a private right of action. *See e.g. Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (finding no private right of action in a case in which plaintiff was attempting to enforce 18 U.S.C. § 241 and 1001); *Zito v. New York City Office of Payroll Admin.*, No.

11 Civ. 2779, 2011 WL 5420054, at \*2 (S.D.N.Y. Nov. 9, 2011) (finding no private right of action in a case in which plaintiff was attempting to enforce, inter alia, 18 U.S.C. § 1001). Plaintiff, whether he calls himself a "flesh and blood" person or an "estate," may not enforce the above criminal statutes against any of the defendants.

#### 5. Miscellaneous Statutes

Plaintiff also cites the Trading with the Enemy Act ("TWEA"), 50 U.S.C. § 4301 et seq. [16] (Compl. at 3 ¶ 7, CM/ECF at 9 ¶ 7). Plaintiff states that "[t]he Constitutional question is how [the TWEA] is operating upon the Estate of ANTHONY BENNETT ...." (*Id.* at 3-4, CM/ECF at 9-10). Plaintiff also states that he has notified the President of the United States. (*Id.* at 4, CM/ECF at 5). He then engages in a lengthy discussion of how he believes that the "defendants" are in violation of the TWEA. (Compl. at 8, CM/ECF at 14).

The TWEA provides that it shall be unlawful for any person in the United States, "except with the license of the President," to, inter alia, trade with "an enemy." 50 U.S.C. § 4303(a) (formerly cited as 50 App. U.S.C. § 3). The "enemy" is defined in 50 U.S.C. § 4302 (formerly cited as 50 App. U.S.C. § 2). Section 4309 is entitled "Claims to property transferred to custodian; notice of claim; filing; return of property; suits to recover; sale of claimed property in time of war or during national emergency." 50 U.S.C. § 4309 (formerly cited as 50 App. U.S.C. § 9).

**\*9** Plaintiff cites the language of section 4309 regarding the "return of property," and appears to claim that defendants Pheffer (Queens County Clerk); Latella (Criminal Court Judge); Brown (Queens County DA); Stringer (NYC Comptroller); and Judge Davis are all in violation of "Title 50." (Compl. at 7, CM/ECF at 13). Plaintiff also claims that these defendants are "Foreign Agents," but are unregistered and unlicensed. (Compl. at 8, CM/ECF at 14). Plaintiff claims that these defendants must register as "debt collectors." (*Id.*) Plaintiff claims that defendants are acting as "Trustees" to plaintiff's bankruptcy estate. [17] But plaintiff does not explain how any of his allegations show that defendants were "trading" with "an enemy" of the United States.

Plaintiff claims that defendants are using "unlawful tax warrants" to steal "this Beneficiary Money, using GSA

UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)

2018 WL 6702852

Case 6:18-cv-01402-GLS-TWD    Document 10    Filed 01/08/19    Page 44 of 47

forms and "Miller Reinsurance Agreement 273, 274, and 275." Even if any of this made sense, plaintiff has not stated how each defendant [18] used these forms and could, or would have committed these acts.

Plaintiff cites the Bank Secrecy Act and the Patriot Act, without citing any relevant sections of the statutes that the defendants allegedly violated. As stated above, plaintiff states that the defendants are required by the Patriot Act and the Bank Secrecy Act to reveal the "source of their funds by filing a currency transaction report." Plaintiff cites 31 U.S.C. § 5311 which is entitled "Declaration of Purpose." Plaintiff has not stated how the defendants violated these statutes or what sections of the statutes they violated.

Plaintiff also cites two other statutes, the "New York Securities Act" and the "Investment Advisors Act," although plaintiff does not cite any sections of these laws that might be relevant to him or to these defendants. The "New York Securities Act" might be a reference to the "Martin Act," N.Y. Gen. Bus. Law § 352, et seq. This statute regulates the purchase and sale of securities, but is inapplicable to this plaintiff because it does not provide for a private right of action. *See Kraus v. Lee*, No. 14-CV-4143, 2015 WL 2354381, at *3 & n.3 (E.D.N.Y. May 15, 2015) (dismissing action for failure to state a claim because plaintiff failed to provide a statutory basis for his securities law claims) (citing N.Y. Gen. Bus. Law § 352 et seq. and *Ajamian v. Zakarian*, No. 1:14-CV-321, 2014 WL 4247784, at *7 (N.D.N.Y. Aug. 26, 2014)).

The "Investment Advisers Act of 1940" is a federal statute, 15 U.S.C. § 80a-1 et seq. It is completely unclear why plaintiff has sued any of the defendants under this statute, and he fails to make any allegations that relate to individuals who are "registered" under the act to provide investment advice. The Supreme Court has held that there exists a "limited" private remedy under this statute to "void an investment adviser's contract," but the act "confers no other private causes of action, legal or equitable. *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 249-50 (1979). Thus, plaintiff fails to state a claim under this statute.

Buried in the complaint is the conclusory statement that plaintiff's civil confinement violates the ex post facto and the double jeopardy clause of the constitution. In support of this statement, plaintiff cites 18 U.S.C. § 241 and 242. (Compl. at 10, CM/ECF at 16). As stated above, plaintiff may not enforce the criminal law against any of the defendants. If plaintiff is challenging his detention, he must file an action under either 28 U.S.C. § 2254 (habeas corpus challenging conviction) or § 2241 (challenges to the execution of his sentence). In any event, plaintiff's short statement regarding civil commitment follows a discussion of deprivation of property, which does not appear to be related to his civil confinement. There is no basis for the conclusory statement about his confinement or why the confinement violates the constitution. If plaintiff wishes to challenge his confinement, he must file a proper action to do so against the proper respondent, who would only be the Superintendent or Warden at the facility where plaintiff is confined. [19]

**\*10** A very carful review of the plaintiff's complaint reveals that he has simply made conclusory allegations of violations of statutes that do not relate to him or to his dismissed bankruptcy action. He may not sue Judge Davis, and he cites no real basis for suing any of the other defendants. It is clear that none of the defendants are federal Government contractors, or others who might be subject to qui tam liability. The court has searched for other bases for jurisdiction, but has found none. [20] As stated above, if plaintiff is attempting to challenge his civil confinement, and he has not done so, he may do so only by filing the appropriate action for habeas corpus against the appropriate respondent.

### 6. Miscellaneous Defendants

Plaintiff names some defendants in the caption who he does not mention or mentions only in passing in the body or the "claims" of his complaint. Plaintiff has named Anthony Annucci, the Commissioner of DOCCS; Deborah J. McCulloch, the Executive Director of CNYPC; Barbara Underwood, the New York State Attorney General; and Steven Mnuchin, the United States Treasury Secretary. There are no facts alleged in the complaint against these individual defendants that would state any claims against any of them. This action is the epitome of an incoherent and frivolous case that should be dismissed sua sponte. Because this court finds that plaintiff's case is frivolous or at best, fails to state a claim, it has no "substance," and the case cannot meet the first requirement for appointment of counsel. Thus, the court will recommend dismissal on initial review and will order

UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)
Case 6:18-cv-01402-GLS-TWD   Document 10   Filed 01/08/19   Page 45 of 47
2018 WL 6702852

denial of plaintiff's motion for counsel. Because this case is not a qui tam action, the court will also order that it be unsealed.

## VI. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

Plaintiff may not bring a qui tam action under any circumstances based on the facts above. Thus, the court will recommend dismissing the qui tam action with prejudice and without the opportunity to amend.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 3) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that the qui tam complaint be **DISMISSED IN ITS ENTIRETY UNDER** 28 U.S.C. § 1915(e)(2)(B)(i-iii), and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 6) is **DENIED**, and it is

**ORDERED**, that this case be **UNSEALED**, and that a copy of this **Order and Report-Recommendation** be served on the United States Attorneys Office in the Northern District of New York.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Slip Copy, 2018 WL 6702852

---

Footnotes

1   In a Qui Tam action, the individual bringing the action is known as the "relator." However, as will be discussed below, this action bears no resemblance to a qui tam action, and appears to be an attempt to sue various individuals, some of whom are afforded absolute immunity, on various meritless bases. Plaintiff also refers to himself as "plaintiff/relator" and to himself and the United States as plaintiffs. Thus. the court will refer to Mr. Bennett as the "plaintiff" in this action.

2   The actual complaint is located at page 7 though 13 as assigned by the court's electronic filing system ("CM/ECF"). The rest of the documents attached appear to be exhibits or plaintiff's affidavits. (Dkt. No. 1 at CM/ECF pp. 1-6, 14-57). Even though plaintiff has numbered his exhibits, the individual pages of the exhibits are sometimes not numbered sequentially. Therefore, court will cite to the page numbers of the complaint itself as plaintiff has numbered them, but will include the page numbers as they are assigned by CM/ECF for the rest of the documents.

3   It is unclear why the plaintiff refers to himself as a person and as an "estate." Plaintiff states that when he filed his "involuntary" petition in bankruptcy, the filing created a "bankruptcy estate" for the protection of his "property," "even though an order for relief may never be entered." (Compl. at 2-3 CM/ECF at 8-9). Plaintiff appears to believe that the "estate" continued even after the bankruptcy case was dismissed.

4   In this section of the complaint, plaintiff also appears to challenge his "civil commitment" as being a violation of the double jeopardy clause and the ex post facto clause. (Compl. ¶¶ 16, 17 at 10).

5   Plaintiff states that the defendants are required by the Patriot Act and the Bank Secrecy Act to reveal the "source of their funds by filing a currency transaction report." Plaintiff cites 31 U.S.C. § 5311 which is entitled "Declaration of Purpose." Plaintiff does not specify which sections of either statute he is relying upon.

6   This affidavit is entitled "Affidavit and Declaration of Standing/Status Non-negotiable ...." (Compl. at CM/ECF 24-38). Without engaging in a lengthy discussion of the affidavit, the court notes that it includes statements such as: "We are the absolute property of our universal creator and our noble House of Bennett and derivatives there of a man ...." (*Id.*) "Our

Case 6:18-cv-01402-GLS-TWD   Document 10   Filed 01/08/19   Page 46 of 47

UNITED STATES OF AMERICA, ex rel. ANTHONY BENNETT,..., Slip Copy (2018)

2018 WL 6702852

distinct Polyphrenic orchestration is determined by our unique, complex and intense DNA, Genome coding and patterning, that determines our noosphere [sic] and existential purpose ...." (*Id.*) Plaintiff states that "[a]t no time, space, reality, realm or dimension does [sic] any have any right to place a price or value on our Divine Being or out sacred gifts defined as Our Estate in Trust with out Universal Divine Creator, except our Divine Being and/or our Universal Divine Creator." (Compl. at CM/ECF 30). Plaintiff then states that no "fiction of law such as a "Birth Application, Record of Live Birth, or an other Registration of Certificate," regardless of title or registration, may "ever be considered a conveyance of title from our Divine Being. (*Id.*) The affidavit continues in the same vein. He discusses "strawman" trusts, fiduciary trustees, and authorized versus unauthorized agents. (Compl. at CM/ECF 32-33). Apparently, unauthorized agents must be fined one billion dollars "per capacity and per occurrence." (*Id.* at 33). Plaintiff alleges that by "publishing" his declaration, he enforces the right to be "free from slavery," among other things. (Compl. at CM/ECF 36-37).

7   For example, "Product Number PS001" is "Abuse of Power," and the "Price" is 20,000. (*Id.*) "Product Number PS002" is "Abuse of Process," and the "Price" is 100,000. There are 98 violations listed with check marks next to 41 of them. (*Id.*)

8   A limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case, even though plaintiff refers to himself as an estate. He may not represent the Government's interests.

9   Plaintiff does not explain what he means by a "Penal Bond," nor does he explain why or how any of the defendants would have presented such a bond to the United States government for "payment." Later in the complaint, plaintiff cites to General Service Administration ("GSA") forms, which plaintiff claims are being "used" by defendants to steal money. One of these forms is GSA SF (standard form) 25, which is a Performance Bond, used in connection with Government contracts. The bonds ensure the contractor's performance of the contract and provide for a "Penal Sum of Bond" if the contractor breaches the contract. Plaintiff may be referring to these bonds, but clearly, there is no nexus between these "bonds" and the defendants in this case. GSA SF 24 is entitled "Bid Bond;" and GSA 25A is entitled "Payment Bond." The Payment Bond provides that it is to be used "for the protection of persons supplying labor and materials in contracts with the Government. The plaintiff refers to a Miller Reinsurance Agreement 273, 274, and 275. He may be referring to SF 273 which is a "Reinsurance Agreement for a Miller Act Performance Bond." The purpose of this bond is to guarantee and indemnify the United States against loss. https://www.gsa.gov/forms-library/reinsurance-agreement-bonds-statute-performance-bond. None of these forms applies to plaintiff, and as stated above, plaintiff has not explained how the defendants "used" these forms to the plaintiff's detriment or to the detriment of the United States. A "tax warrant" creates a lien against real and personal property. https://www.tax.ny.gov/enforcement/collections/warrants_liens.htm. A tax warrant is used by New York State, while the IRS uses federal tax liens. https://www.irs.gov/businesses/small-businesses-self-employed/understanding-a-federal-tax-lien

10  Plaintiff also states that Judge Davis "and Law clerk" have committed "these acts." (Compl. at 9). Plaintiff has not named Judge Davis's law clerk as a defendant, and there is no specific statement of what that "law clerk" did. Plaintiff also refers to a court clerk, but has not named that individual as a defendant. A law clerk and a court clerk are generally two different individuals. Plaintiff's careless and conclusory statements regarding individual actors support this court's determination that plaintiff's complaint violates Rule 8 and has no substance for purposes of appointment of counsel.

11  Plaintiff is civilly confined in the CNYPC and may not leave the facility on his own.

12  Claims against an individual, acting under color of state law for alleged constitutional violations would have to be brought under 42 U.S.C. § 1983. Plaintiff does not mention section 1983 and could not sue Justice Latella under that section.

13  Even if Judge Latella were an administrative judge, absolute immunity has been extended to administrative judges. *Ezeh v. VA Medical Center, Canandaigua, NY*, No. 13-CV-6563, 2014 WL 4897905, at *13 (W.D.N.Y. Sept. 29, 2014) (citing *Butz v. Economou*, 438 U.S. 478, 511 12 (1978) (federal administrative judges); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 714 (S.D.N.Y. 2011) (citation omitted) (state administrative judges).

14  The same is true for the District Attorney of Queens County, defendant Brown. Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence). However, absolute immunity is defeated when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d 495, 502-503 (2d Cir. 2004) (citation omitted). Because plaintiff's factual statement does not relate to the prosecution of his criminal case, the court will not discuss the potential for prosecutorial immunity.

15  Section 1956 is a very long statute, and this is not the entire list of potential criminal acts.

16  The TWEA was formerly cited as 50 App. USC § 1. *See* 50 U.S.C. § 4301 (Designation of the Act). Plaintiff has referred to this statute with its former citation. (Compl. at 3 ¶ 7, CM/ECF 9 ¶ 7).

2018 WL 6702852

17  Plaintiff appears to believe that even though his bankruptcy case was dismissed, there is still a "bankruptcy estate" somewhere, over which the defendants somehow have control and are mishandling.

18  In addition, most of the defendants named by the plaintiff do not reside in the Northern District of New York.

19  Depending upon the claim that an inmate is attempting to make, 42 U.S.C. § 1983 might be available for such a challenge to the procedures used for confinement at CNYPC. *See e.g. Dorsey v. Hogan*, 511 F. App'x 96 (2d Cir. 2013) (discussing section 1983 challenge to civil commitment). Plaintiff does not appear to be making this type of a claim. Even if he is, the claim is so buried in a mountain of nonsensical claims, against defendants who have nothing to do with his current commitment, that he would have to substantially amend the pleading in order for the court to determine what he might be saying.

20  Constitutional claims against individual state actors are generally brought under 42 U.S.C. § 1983, while constitutional claims against individual federal employees are brought under *Bivens*. Plaintiff does not states claim under either of these bases for jurisdiction.

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.